# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00232-CV

**City of Austin, Appellant**

v.

**Harry M. Whittington; Mercedes B. Whittington; Mercedes Gregg f/k/a Mercedes Whittington, Individually and as Trustee of the Margaret Lynn Puckett 1989 Trust, the Sara Whittington May 1989 Trust, the Caroline Elizabeth Puckett 1989 Trust, the Michael Erskine May 1989 Trust, the Camille Meriwether May 1989 Trust, and the William Tyndale Puckett, Jr. 1989 Trust; Sally Whittington May, Individually and as Trustee of the Margaret Lynn Puckett 1989 Trust, the Sara Whittington May 1989 Trust, the Caroline Elizabeth Puckett 1989 Trust, the Michael Erskine May 1989 Trust, the Camille Meriwether May 1989 Trust, and the William Tyndale Puckett, Jr. 1989 Trust; and Margaret Whittington Puckett, Individually and as Trustee of the Margaret Lynn Puckett 1989 Trust, the Sara Whittington May 1989 Trust, the Caroline Elizabeth Puckett 1989 Trust, the Michael Erskine May 1989 Trust, the Camille Meriwether May 1989 Trust, and the William Tyndale Puckett, Jr. 1989 Trust, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
## NO. GN302752, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this case, we are being asked to address a district court's declaratory judgment interpreting the judgment of a county court that has been reversed and remanded for completion of trial. The City of Austin (the "City") attempted to condemn property owned by Harry Whittington and the other individuals listed in the style of this case (the "Whittingtons"). A condemnation proceeding was conducted in a county court at law, and the City obtained title to the property listed in its resolution. That judgment was later reversed on appeal. Prior to the reversal of the judgment,

the Whittingtons filed a declaratory judgment action in district court and obtained declarations regarding the effect of the county court's judgment. However, because the county court's judgment was not final when the declaratory judgment action was filed, the declaratory judgment action was not ripe. Accordingly, we vacate the district court's judgment and dismiss the appeal due to a lack of ripeness.

## BACKGROUND

Harry Whittington obtained title to a city block in downtown Austin in 1981 and later conveyed the property to various trusts benefitting his family. The property consists of eight lots: four on the north side of the property and four on the south side. The lots are separated by a twenty-foot wide strip running down the middle of the block.

In 2001, the City initiated efforts to obtain the property. As part of this effort, the Austin City Council passed a resolution stating that the Whittingtons' property "Lots 1-8, inclusive, Block 38 . . . in the City of Austin . . . should be acquired for public use." Because the Whittingtons contested the condemnation, the matter was transferred to a county court for trial. *See* Tex. Prop. Code Ann. §§ 21.001 ("District courts and county courts at law have concurrent jurisdiction in eminent domain cases."), .012 (condemning entity may begin condemnation proceeding by filing petition in proper court) (West 2004). In county court, the City filed a motion for partial summary judgment contending that it had proved, as a matter of law, all the elements necessary to condemn the property. Two of the elements that must be proved are that the condemnation is for a public use and that the condemnation is necessary to achieve the public use. *See Whittington v. City of Austin*, 174 S.W.3d 889, 896 (Tex. App.—Austin 2005, pet. denied); *see also* Tex. Const. art. I, § 17

("No person's property shall be taken, damaged or destroyed for or applied to *public use* without adequate compensation being made . . . .") (emphasis added).

The county court granted the motion for partial summary judgment, and a trial was conducted regarding the amount of compensation. During the trial, the Whittingtons argued that the City's description of the property to be condemned did not include the twenty-foot strip in the middle of the block and insisted that the City would have to address that issue if it also wanted to obtain title to the strip. Ultimately, the jury awarded the Whittingtons $7,750,000 as compensation for the condemnation.[1] The final judgment specified that the City obtained title to the property described in its condemnation petition. However, the county court, recognizing its lack of authority to decide matters regarding title, stated in its judgment that it made no determination regarding whether the City's description included the "twenty-foot strip of land separating Lots 1-4 and Lots 5-8." *See* Tex. Prop. Code Ann. § 21.002 (West 2004) (county court may not decide issues of title).

The Whittingtons appealed, arguing that the county court's summary judgment was improper because the City had no authority to condemn the property. Specifically, they asserted that the City did not conclusively establish as a matter of law that the condemnation was necessary or that the condemnation was for a valid public purpose. This Court agreed and reversed and remanded the case back to the county court for a trial on the merits regarding whether the City had the authority to condemn the Whittingtons' property. *Whittington*, 174 S.W.3d at 900-01, 904, 906. The trial on remand has yet to occur.

_____

[1] The description of the property condemned mirrored the City's description in its resolution.

3

Shortly before appealing the county court's judgment, the Whittingtons filed a declaratory judgment action in district court. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 1997 & Supp. 2006) (declaratory judgment actions). The Whittingtons, pleading their case as if the county court judgment was a final judgment, asked the district court to interpret the county court's judgment and determine whether the City obtained title to the twenty-foot strip as a result of the judgment. In their petition, the Whittingtons asserted that *as a result of the condemnation proceeding*:

the City obtained fee simple title to Lots 1-8, inclusive, Block 38, of the Original City of Austin. The City did not seek or obtain title to the 20-foot strip separating Lots 1-4 from Lots 5-8. . . . The Whittingtons thus continue to own in fee simple the 20-foot strip of land through the center of Block 38 . . . . A controversy thus exists between the City and the Whittingtons requiring judicial resolution.

The Whittingtons requested the following declarations in their petition:

18. Pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, the Whittingtons respectfully request judgment declaring, under the deed attached as Exhibit A and the 1929 Act, that the Whittingtons are the owners in fee simple of the 20-foot strip of land running across the center of Block 38 of the Original City of Austin, as depicted on the plat on file with the General Land Office.

19. In the alternative, the Whittingtons respectfully request judgment declaring that the City of Austin has abandoned, or is estopped from asserting, any right and title to the 20-foot strip of land running across the center of Block 38 of the Original City of Austin, as depicted on the plat on file with the General Land Office, and that the Whittingtons are therefore the owners in fee simple of said land under the deed attached as Exhibit A.

20. In the further alternative, the Whittingtons respectfully judgment [sic] declaring, under the deed attached as Exhibit A, that the Whittingtons are the owners in fee simple of the 20-foot strip of land running across the center of Block 38 of the Original City of Austin, as depicted on the plat on file with the General Land Office,

because their predecessors in title acquired title by limitations through possession, use, and enjoyment of the 20-foot strip for a period of ten years prior to 1939 that was exclusive and adverse to any claim by the City to the 20-foot strip.

In response, the City filed an answer arguing that the Whittingtons' declaratory judgment action was not ripe for adjudication because the Whittingtons were appealing the county court's condemnation judgment and that "the disposition of the condemnation proceeding on appeal shall, in all likelihood, render this cause of action moot." The City also filed a counterclaim asking the court to declare, among other things, that it obtained title to the entire block in the condemnation proceeding.

In its final judgment, the district court made the following declarations:

(1) [The Whittingtons] are owners in fee simple of the 20-foot strip of land separating lots 1-4 and 5-8 of Block 38, . . . .

(2) There is no public easement across the 20-foot strip of land . . . .

(3) [The City] has no right, title, or interest in the 20-foot strip . . . .

[(4)] [The City] did not condemn the entirety of Block 38 in [the county court condemnation proceeding], and the legal description in the Final Judgment did not include the 20-foot strip . . . .

[(5)] The [county court's reservation of judgment] in such Final Judgment is a meaningful and proper reflection of the limited jurisdiction of the [county court], is an express reservation of a legal issue, and is not mere surplusage . . . .

[(6)] The [county court's] Final Judgment . . . is not void or fraudulent.

[(7)] [The Whittingtons'] causes of action in [the district court] is not a collateral attack upon the Final Judgment in the [county court].

5

In addition, the district court awarded the Whittingtons $197,000 in attorney's fees: $102,000 for fees incurred during the proceeding in district court, $45,000 for an appeal to this Court, $20,000 if either party appeals to the supreme court, and an additional $30,000 if the supreme court grants review. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997) (court may award attorney's fees in declaratory judgment action).

The City appeals the judgment of the district court.

## DISCUSSION

The City raises two issues on appeal. First, it argues that the district court erred when it declared that the City does not own the twenty-foot strip. In raising this issue, the City essentially asks this Court to interpret the county court's judgment and determine whether the strip would have been included in the condemnation if the county court's judgment had not been reversed. Second, the City contends that the attorney's fee award should be reversed. Because the county court's judgment was not final, we conclude that the district court did not have jurisdiction to issue declarations regarding the interpretation and effect of the county court's original judgment and should have dismissed the case.

The Uniform Declaratory Judgment Act ("UDJA") allows a claimant to petition the court for a declaration regarding his or her rights under a written instrument. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 1997). The UDJA does not expand the scope of a trial court's subject matter jurisdiction but merely authorizes a court "to declare rights, status, and other legal relations" when subject matter jurisdiction is already present. Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a) (West 1997) (court may act "within its jurisdiction"); *Texas Ass'n of Bus. v. Texas Air*

6

*Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). In order for a court to issue a declaratory judgment, there must be a "justiciable controversy as to the rights and status of" the parties, and the requested declaration "must actually resolve the controversy." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163-64 (Tex. 2004). "A justiciable controversy is one in which a real and substantial controversy exists involving a genuine conflict of tangible interests and not merely a theoretical dispute." *Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153 (Tex. App.—Austin 1998, no pet.).

Ripeness is a necessary component of subject matter jurisdiction. *Atmos Energy Corp. v. Abbott*, 127 S.W.3d 852, 857 (Tex. App.—Austin 2004, no pet.); *see also Aguilar v. Weber,* 72 S.W.3d 729, 731 (Tex. App.—Waco 2002, no pet.) (subject matter jurisdiction may be addressed for first time on appeal, and court may make this inquiry on its own accord). The requirement that a claim be ripe for review is based on the prohibition against courts' issuing advisory opinions. *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998); *see also* Tex. Const. art. II, § 1 (separation of powers); *Northglen Ass'n*, 141 S.W.3d at 164 (separation of powers provision bars issuance of advisory opinions). A claim is ripe if the facts involved demonstrate that "an injury has occurred or is likely to occur." *Patterson*, 971 S.W.2d at 442. In other words, there must be a concrete injury for the claim to be ripe. *See Atmos Energy Corp.*, 127 S.W.3d at 858. A claim is not ripe if it is based on hypothetical or contingent facts that may not occur as anticipated or may not occur at all. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000).

By requiring a concrete injury, the ripeness doctrine prevents a claim from being prematurely adjudicated. *See Patterson*, 971 S.W.2d at 442. In addition to considering the timeliness of the case, a court must also consider whether it *should* decide the issue and not simply

7

whether it *can* decide the issue when determining if a claim is ripe. *Perry v. Del Rio*, 66 S.W.3d 239, 249-50 (Tex. 2001); *Atmos Energy Corp.*, 127 S.W.3d at 857. When making this decision, courts must consider (1) the fitness of the issues for judicial decision and (2) the hardship occasioned to a party by the court's denying judicial review. *Perry*, 66 S.W.3d at 250.

A plaintiff has the burden to affirmatively demonstrate the trial court's subject matter jurisdiction over the case. *Texas Ass'n of Bus.*, 852 S.W.2d at 446. The Whittingtons requested a declaration that they own the 20-foot strip in fee simple, arguing three different theories in their petition. A controversy concerning whether the Whittingtons owned the strip in fee simple only existed because of the county court's judgment.

Six of the seven declarations obtained, by their terms, are inextricably tied to the county court's original judgment in the condemnation proceeding. When viewed in light of the parties' petitions, which tie the existence of a live controversy to the condemnation proceeding, the seventh, whether there exists a public easement across the strip, was also issued solely in response to the county court's judgment.[2] However, the declaratory judgment action at issue was filed in the district court prior to the deadline for filing an appeal from the county court's judgment. *See* Tex. R. App. P. 26.1 (time to perfect appeal in civil cases). In addition, it was the Whittingtons who initiated both the declaratory judgment action and the appeal from the county court's judgment. By filing the

---

[2] Additionally, the easement issue was not raised by the Whittingtons' petition, which asked only for a declaration that the Whittingtons own the strip in fee simple. The issue was only arguably tried by consent during a trial that never should have occurred because the pleadings did not confer subject matter jurisdiction on the trial court. Subject matter jurisdiction "exists by operation of law only, and cannot be conferred upon any court by consent." *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000) (quoting Federal Underwriters Exch. v. Pugh, 141 Tex. 539, 174 S.W.2d 598, 600 (Tex. 1943)).

8

declaratory judgment action, the Whittingtons essentially asked the district court to construe the judgment rendered in the county court even though that judgment was not final. The validity of the district court's declarations was necessarily contingent on the judgment's being affirmed on appeal in all respects. As a result, the Whittingtons' declaratory judgment action was not ripe when filed.

Because the county court's judgment was reversed and because a trial on the merits has not yet commenced, the Whittingtons currently have title to the entire property. *See In re S.S.G.*, No. 07-04-0496-CV, 2006 Tex. App. LEXIS 1544, *6 (Tex. App.—Amarillo Feb. 27, 2006, pet. denied) (designated for publication) (effect of reversal is to nullify trial court's judgment, "leaving it as if it had never been rendered"); *Culligan Soft Water Service v. State*, 385 S.W.2d 613, 615 (Tex. Civ. App.—San Antonio 1964, writ ref'd n.r.e.) (until court makes decree, title is not transferred to condemning authority). Given that the district court's declarations are specifically limited to the now nonexistent county court judgment, there is no justiciable controversy for this Court to resolve.

Despite the reversal of the county court's condemnation judgment, the parties ask this Court to issue an opinion to aid in a future condemnation proceeding. We decline the parties' invitation to issue what amounts to an impermissible advisory opinion.

Any opinion by this Court regarding whether the strip would be included in a condemnation proceeding would amount to an impermissible advisory opinion because it would be based on hypothetical or contingent facts. *See Perry*, 66 S.W.3d at 249 (claim not ripe if involves "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."). First, although the original county court's judgment was reversed and remanded for a trial on

9

the merits, there is no guarantee that a trial will actually occur. The City may abandon its attempts to condemn the property, or the parties may settle their dispute prior to trial.

Second, it is unclear whether an opinion by this Court concerning a county court judgment that no longer exists would have any binding effect on a future judgment. Our opinion would arguably have an effect only if certain contingencies were met. For example, the City would have to prevail in a future trial on the merits. In other words, a future judgment would have to confirm that the City has the authority to condemn the property. If the Whittingtons ultimately prevail on this issue, meaning that a judgment is entered stating that the City does not have the authority to condemn the property, then the issue of whether the City acquired title to the twenty-foot strip by condemnation would be moot. Moreover, the validity of the judgment would also depend on the use of an identical condemnation description in the future trial. If the description is not identical to the one originally used in the county court, then the construction of the county court's judgment would have no effect on the subsequent judgment.

By asking this Court to address the merits of the case, the parties have asked us to engage in an impermissible short-cut through the appellate process. This we cannot do. Any hardship to the parties resulting from this Court's failure to address the issues on appeal only amounts to a requirement that the parties go through the normal appellate process: a burden equally imposed on all litigants. Although the parties may still quarrel over whether the City can condemn the property, that dispute is not before us today.

For all the reasons previously given, we conclude that the Whittingtons' claims regarding the county court's original judgment in the condemnation proceeding were not ripe when

the Whittingtons filed this declaratory judgment action. Therefore, we conclude that the district court did not have jurisdiction to issue its judgment. Because the district court did not have jurisdiction over these claims, we vacate the district court's judgment and dismiss the case. Tex. R. App. P. 43.2(e); *see also City of Keller v. Wilson*, No. 2-00-183-CV, 2007 Tex. App. LEXIS 1459, *23 (Tex. App.—Fort Worth Mar. 1, 2007, no pet. h.) (because trial court lacked jurisdiction, court's judgment must be vacated). Accordingly, we do not reach the issues raised by the City.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Puryear and Henson

Vacated and Dismissed for Want of Jurisdiction

Filed:   April 26, 2007

11