**Opinion issued February 28, 2013**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-12-00873-CV**

————————————

**TEXAS MUNICIPAL POWER AGENCY, Appellant**

**V.**

**KIRK A. JOHNSTON, Appellee**

---

**On Appeal from the 12th District Court**
**Grimes County, Texas**
**Trial Court Case No. 32402**

---

**O P I N I O N**

Kirk A. Johnston sought temporary and permanent injunctive relief against

the Texas Municipal Power Agency ("TMPA") to prohibit TMPA from, among

other things, entering onto his property to conduct surveys and inspections and

attempting to condemn a portion of his property. TMPA filed a plea to the jurisdiction, and the trial court denied the plea. In two issues, TMPA contends that the trial court erred in denying its plea to the jurisdiction because (1) Johnston's petition did not present a justiciable controversy and (2) governmental immunity barred Johnston's claims against it.

We reverse and render.

### Background

TMPA and Johnston own adjacent properties in Grimes County. TMPA desired to raise the water level in a sediment pond ("SP-50") located on its property, but to do this, it needed to obtain "an impoundment easement and a flood easement" on a portion of Johnston's property. On April 26, 2012, TMPA's counsel sent Johnston a letter concerning its request to conduct surveys and inspections of this portion of Johnston's property. The letter reflected that TMPA and Johnston had previously been in contact regarding the survey work and that Johnston had, on April 13, 2012, "declined to provide TMPA representatives and contractors with access to [his] property to conduct these surveys and inspections." The April 26, 2012 letter asked for Johnston's "cooperation in the scheduling of the proposed survey work and inspections."

The letter also included the following paragraph:

While it is TMPA's desire to work with you to resolve this matter amicably, you should understand that if you continue to withhold

2

consent to the survey and inspections, then TMPA may have no choice but to avail itself of its legal remedies. Should TMPA elect to resort to legal proceedings, I anticipate that it will seek (1) injunctive relief to allow the surveyors and consultants to enter onto the property, (2) a judgment declaring that TMPA has the right, consistent with the authorities referenced above [two cases stating that TMPA has, in conjunction with its eminent domain power, the authority to enter onto property to survey the property in preparation of exercising this power], to enter upon and survey and inspect the property, and (3) the recovery of reasonable and necessary attorneys' fees incurred in securing declaratory relief.

The letter stated that TMPA was willing to make its representatives available for a meeting with Johnston and his counsel. TMPA's counsel requested that Johnston provide an answer regarding "whether [he] will cooperate in the scheduling of the survey and inspection" by May 2, 2012. The letter also included a "Temporary Right of Entry" form to be executed by Johnston and TMPA, which granted TMPA a "temporary right of entry over, under, and across" Johnston's property. The form stated that the right of entry was for

the purposes of performing survey work and non-invasive inspections and assessments relating to the analysis of the proposed easement boundaries and potential impacts associated with the acquisition of easement rights in connection with TMPA's plans to raise the water level in an existing sediment pond, referred to as SP-50, the dam for which is constructed on land adjoining the Property.

On May 2, 2012, Johnston filed an original petition and application for temporary and permanent injunction. Johnston alleged that TMPA had informed him that it intended to obtain an easement on his property "for the stated purposes of economically developing and landscaping [TMPA's own] 723.10 acre property

3

in order to sell it to a private individual or entity for a market price elevated by the condemnation." Johnston asserted that TMPA lacked authority to exercise its eminent domain powers to condemn a portion of his property and that TMPA "has no legal access to the property for any purpose." He alleged that, by its actions, TMPA "is threatening to condemn the property owned by the Plaintiff when it is without statutory authority to condemn the land or any interest in it."

Johnston sought the following relief:

- On hearing, a temporary injunction be issued requiring Defendant TMPA to (i) cease and desist from its attempts to gain access, survey, study, assess, bore, drill, dig, excavate, clear, and destroy vegetation on Plaintiff's land and (ii) to comply with all applicable constitutional sections and statutory limitations and requirements, including the constitutional prohibition of taking property for economic development in order to sell the land and easements, to private persons or entities.

- On final hearing and trial, Defendant be permanently enjoined from accessing, surveying, studying, assessing, inspecting, occupying, boring, drilling, digging, erecting, excavating, clearing, cutting, staking, destroying, or condemning Plaintiff's 535 acres or any part or interest therein. Further, on final hearing, Defendant be permanently enjoined and required to comply with the order preventing its attempts to condemn Plaintiff's land to gain access, to survey, study, assess, bore, drill, dig, excavate, clear, and destroy vegetation on Plaintiff's 535 acres or any part thereof.

- Plaintiff have judgment against Defendant TMPA for civil damages suffered due to any actions taken by TMPA in violation of the constitutional prohibitions and restrictions and the statutory limitations and restrictions.

4

In response, TMPA filed a plea to the jurisdiction. TMPA asserted that because its Board of Directors ("the Board") had "neither declared the existence of a public purpose or necessity for the filing of a condemnation proceeding to acquire a property interest from Plaintiff nor authorized the initiation of such a condemnation proceeding," which is a statutory prerequisite to the initiation of a condemnation proceeding, Johnston's "allegations and claims confirms the absence of a justiciable controversy." TMPA contended that, because the Board had not authorized a condemnation proceeding, no real or substantial controversy existed between the parties, and thus the question of whether TMPA had a permissible public purpose for seeking to condemn a portion of Johnston's property was not ripe for judicial resolution.[1] TMPA also argued that no real and substantial controversy existed because it had not entered Johnston's property, it had not threatened to enter Johnston's property without his permission or a court order, and it was not currently seeking a court order authorizing entry onto the property.

---

[1] TMPA attached an affidavit from Wanda Callahan, the assistant secretary to the Board , who certified that

> the minutes and other records of the TMPA Board of Directors' meetings contain no record of the adoption by the Board of Directors of any motion, order, or resolution or any other action declaring the existence of a public purpose or necessity for the filing of a condemnation proceeding to acquire any property interest owned by Kirk A. Johnston or otherwise authorizing the filing of such a proceeding.

5

TMPA asserted that Johnston was seeking an anti-suit injunction prohibiting it from initiating condemnation proceedings but that Johnston "cannot show any entitlement to relief" on this basis. TMPA attached an e-mail from Johnston's counsel, which stated:

> [Johnston] is extremely interested in buying the 723.10 acre TMPA property, but does not wish to do so under the threat of condemnation. Therefore, I have filed the attached cause of action [Johnston's original petition] on this date in hopes that he and TMPA can work out their differences outside the threat of TMPA taking back part of the land it sold to Mr. Johnston.

TMPA also asserted governmental immunity from suit and liability, and it argued that Johnston had not pleaded any applicable waiver of immunity.

In his response to the plea to the jurisdiction, Johnston stated that TMPA had initially informed him that it desired to raise the level of the sediment pond "partially to cover chemically or radioactively contaminated sediment and soil which was part of TMPA's lignite mining efforts, but primarily for a beautification and landscaping program which would increase the land it owns as well as the sale price of its 723 acres of land surrounding [the sediment pond]." Johnston asserted that his property would be "inundated and flooded" if TMPA was allowed to condemn the property and raise the level of the sediment pond. Johnston also alleged that he began negotiations to purchase the 723-acre tract from TMPA in spring 2006, but these negotiations were ultimately unsuccessful. In January 2012,

6

TMPA sent Johnston a copy of the Landowners' Bill of Rights and an initial offer to purchase and an appraisal of the relevant portion of Johnston's property.

Johnston contended that he was entitled to injunctive relief because TMPA's proposed condemnation of his property exceeded its statutory eminent domain authority and was "entirely void." He also argued that a justiciable controversy existed because, by delivering a condemnation appraisal, initial offer, and a copy of the Landowners' Bill of Rights, TMPA had "invoked the condemnation procedures" of Texas Property Code Chapter 21. He contended that he had the right to prevent his property "from being inundated and flooded by seeking injunctive relief." He further argued that "once it becomes clear that the agency lacks the discretion to exercise [its] eminent domain authority, the taking claim has ripened."

Johnston then filed a supplement to his original petition which stated:

Subject to and without waiving the pleadings and prayer in Plaintiff's Original Petition and his Response to Defendant's Plea to the Jurisdiction, Plaintiff now asserts that the Defendant "TMPA" has objected to the Court's exercise of jurisdiction over the claims asserted in Plaintiff's Original Petition and Application for Temporary and Permanent Injunction (the "Application") because, as a political subdivision of the State of Texas, TMPA alleges it enjoys immunity from suit and that it has not waived such immunity with respect to the claims asserted in the Application. However, Plaintiff claims in his Application for equitable relief that such claims are in part based upon the violation of his constitutional rights under Article I Section 19 and Article I Section 17 [of the Texas Constitution], whereby the TMPA has denied or attempted to deny the Plaintiff's constitutional rights of property and privileges by denying him due process pursuant to the

7

due course of the law and the taking, damaging and/or destruction of his real and personal property by fraudulent, illegal and void actions. Such unconstitutional actions and statutory violations by TMPA are not protected by either sovereign or governmental immunity and are specifically subjected to the jurisdiction of this Court and its equitable authority, since equitable remedies such as injunctive relief are available to prevent or enjoin constitutional and statutory violations.

The trial court held a hearing on TMPA's plea to the jurisdiction. As exhibits, the trial court admitted TMPA's "no records certificate" from Wanda Callahan, the April 26, 2012 letter from TMPA's counsel to Johnston, and the e-mail from Johnston's counsel to TMPA's counsel with Johnston's original petition and application for injunctive relief attached. Johnston objected to the admission of the no-records certificate on the basis of hearsay, but the trial court overruled this objection. No witnesses testified at this hearing. The trial court denied TMPA's plea to the jurisdiction, and this interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon Supp. 2012) (allowing party to take interlocutory appeal from denial of plea to jurisdiction filed by governmental unit).

**Plea to the Jurisdiction**

In its first issue, TMPA contends that the trial court erred in denying its plea to the jurisdiction because Johnston's petition did not present a justiciable controversy. In its second issue, TMPA contends that the trial court erred in

8

denying its plea to the jurisdiction because governmental immunity barred Johnston's claims.

## A. Standard of Review

We review a trial court's ruling on a plea to the jurisdiction de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When reviewing a trial court's ruling on a jurisdictional plea, "we first look to the pleadings to determine if jurisdiction is proper, construing them liberally in favor of the plaintiffs and looking to the pleader's intent," and "we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised." *City of Waco v. Kirwan*, 298 S.W.3d 618, 621–22 (Tex. 2009). In considering this jurisdictional evidence, we "take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* at 622. We do not adjudicate the substance of the case but instead determine whether a court has the power to reach the merits of the claim. *City of Houston v. S. Elec. Servs., Inc.*, 273 S.W.3d 739, 744 (Tex. App.— Houston [1st Dist.] 2008, pet. denied) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). If the pleadings affirmatively negate the existence of jurisdiction, the plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend his pleadings. *Miranda*, 133 S.W.3d at 227. If

9

the relevant evidence is undisputed or fails to raise a fact issue as to jurisdiction, the trial court rules on the plea as a matter of law. *Id.* at 228.

### B. *Justiciable Controversy*

TMPA contends that no justiciable controversy exists because the dispute between it and Johnston is not ripe for adjudication.

Ripeness is an element of subject matter jurisdiction. *City of Anson v. Harper*, 216 S.W.3d 384, 390 (Tex. App.—Eastland 2006, no pet.) (citing *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994)). The basis for the ripeness doctrine is the separation of powers provision in Article II, section 1 of the Texas Constitution, which "prohibits courts from issuing advisory opinions because that function is reserved to the executive branch." *Id.* (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998)).

In considering whether a plaintiff's claim is ripe, we consider whether, at the time the lawsuit is filed, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote. *Harris Cnty. Mun. Util. Dist. No. 156 v. United Somerset Corp.*, 274 S.W.3d 133, 139 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (quoting *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851–52 (Tex. 2000)). A claim is not ripe if it concerns "uncertain or contingent future events that may not occur as anticipated or may not occur at all." *Id.* (quoting *Gibson*, 22 S.W.3d at 852). A claim is also not ripe

10

when the determination of whether the plaintiff has a concrete injury depends on contingent or hypothetical facts or upon events that have yet to come to pass. *Id.* The threat of harm can constitute a concrete injury, but this threat must be "direct and immediate" rather than "conjectural, hypothetical, or remote." *Id.* This concrete-injury requirement thus prevents a claim from being prematurely adjudicated. *City of Austin v. Whittington*, 385 S.W.3d 28, 33 (Tex. App.—Austin 2007, no pet.); *see also Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998) ("Ripeness thus focuses on whether the case involves 'uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.' By maintaining this focus, the ripeness doctrine serves to avoid premature adjudication."). When determining whether a claim is ripe, the court must consider not merely whether it *can* decide the issue, but whether it *should* decide the issue. *See Whittington*, 385 S.W.3d at 33–34.

In *City of Anson*, the City desired to build a landfill on the surface of property for which the plaintiff owned the mineral estate, and the Eastland Court of Appeals addressed whether the plaintiff's inverse-condemnation claim was ripe when the City's landfill permit application was still pending before the Texas Commission on Environmental Quality ("TCEQ"). *See* 216 S.W.3d at 389–90. The court cited two Fifth Circuit cases for the proposition that the controversy was

11

not ripe because "regulatory approval of the landfill was still pending," and thus the plaintiffs had not yet suffered any actual damages. *Id.* at 390 (citing *Smith v. City of Brenham*, 865 F.2d 662, 663–64 (5th Cir. 1989) and *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003)); *see also Hubler v. City of Corpus Christi*, 564 S.W.2d 816, 821–22 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.) ("It is well settled in Texas that future plans which might result in a future taking are merely 'future prospects' and, as such, cannot constitute a present taking. Even the announcement of a projected public improvement together with preparation of plans and maps showing the property in question within the limits of the project, without any interference with the land owner's use, does not constitute a present taking."). The Eastland Court of Appeals reasoned that the TCEQ ultimately may or may not grant the City's permit application, and "[u]nless and until the City receives a permit, it cannot construct or operate a landfill." *City of Anson*, 216 S.W.3d at 390. The court concluded that "[w]hat might happen if the City's permit application is approved does not present a ripe controversy, and the trial court does not have jurisdiction to hear a claim based upon future events."[2] *Id.*

---

[2]  This was not the end of the inquiry in *City of Anson* because the City had already done some preliminary construction work on the surface estate of the property. *City of Anson v. Harper*, 216 S.W.3d 384, 390 (Tex. App.—Eastland 2006, no pet.). Therefore, the court had to address whether the trial court properly denied the City's plea to the jurisdiction on Harper's inverse condemnation claim as that claim related to actions that the City had already taken. *Id.* at 390–91.

TMPA is a municipal power agency created pursuant to Texas Utilities Code Chapter 163 and is a political subdivision of the State. *See* TEX. UTIL. CODE ANN. § 163.054(c)(2) (Vernon 2007). As a political subdivision, TMPA thus possesses eminent domain powers, but before TMPA can initiate condemnation proceedings, it must first authorize the initiation of such proceedings at a public meeting by a record vote. *See* TEX. GOV'T CODE ANN. § 2206.053(a)(1) (Vernon Supp. 2012).

Here, TMPA and Johnston have previously engaged in negotiations regarding both Johnston's purchase of the property owned by TMPA and TMPA's acquisition of easement rights on a portion of Johnston's property. These negotiations have not been successful. In an attempt to gain access to Johnston's property to conduct surveys and inspections in advance of deciding whether to exercise its eminent domain powers, TMPA's counsel sent Johnston a letter on April 26, 2012, requesting his cooperation in permitting access to the property. In the letter, TMPA's counsel stated that if Johnston continued to withhold consent to the surveys and inspections, it "may have no choice but to avail itself of its legal remedies," including injunctive relief to allow entry onto the property, a declaration that TMPA has the right to enter onto the property, and any permissible attorney's fees. TMPA has not filed a condemnation proceeding, and it has not filed its own application for injunctive relief seeking access to Johnston's property for survey purposes. At the hearing on its plea to the jurisdiction, the trial court

13

admitted into evidence a certification from Wanda Callahan, the assistant secretary of the Board, certifying that the minutes and records of the Board's meetings "contain no record of the adoption by the Board of Directors of any motion, order, or resolution or any other action declaring the existence of a public purpose or necessity for the filing of a condemnation proceeding to acquire any property interest owned by Kirk A. Johnston or otherwise authorizing the filing of such a proceeding."[3]

Johnston cites the Tyler Court of Appeals' decision in *Laird Hill Salt Water Disposal, Ltd. v. East Texas Salt Water Disposal, Inc.*, for the proposition that "[i]t is not necessary for a governing board of a condemnor to have authorized the condemnation prior to the condemnation petition having been filed." 351 S.W.3d 81, 89 (Tex. App.—Tyler 2011, pet. denied). This decision, however, predates Government Code section 2206.053(a), which became effective on September 1, 2011, and which requires a governmental entity to "authorize the initiation of the condemnation proceeding at a public meeting by a record vote" before filing a petition under Property Code Chapter 21 to initiate such a proceeding. *See* TEX.

---

[3] Johnston objected to the admission of the no-records certificate on the ground that this document constitutes inadmissible hearsay. This document, however, proves "the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency" and thus falls within an exception to the hearsay rule. *See* TEX. R. EVID. 803(10); *see also id.* 902(1) (providing that document of political subdivision under seal is self-authenticating).

14

GOV'T CODE ANN. §2206.053(a)(1). This section thus imposes a statutory prerequisite on entities seeking to initiate a condemnation proceeding, and TMPA's evidence submitted at the plea to the jurisdiction hearing indicate that this prerequisite has not yet occurred in this case.

This case is thus analogous to *City of Anson*, in which the plaintiff sought damages for inverse condemnation resulting from the planned construction of a landfill, but the TCEQ had not yet approved the City's permit to construct the landfill. *See* 216 S.W.3d at 390–91. Similarly, here, although TMPA has indicated its desire to use its eminent domain powers to obtain an easement on a portion of Johnston's property, the Board has not yet authorized the initiation of a condemnation proceeding. Until it so authorizes such a proceeding, TMPA cannot file a petition initiating condemnation. *See* TEX. GOV'T CODE ANN. § 2206.053(a)(1). Thus, until the Board authorizes the condemnation of Johnston's property and TMPA actually files a condemnation proceeding, Johnston has not suffered a concrete injury. *See United Somerset Corp.*, 274 S.W.3d at 139. For example, the Board may decide not to pursue the raising of SP-50 and thus it may decide not to authorize the initiation of a condemnation proceeding. *See Tex. Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 394 (Tex. App.—Fort Worth 2008, no pet.) ("Because the City has expressly stated that it will not use its eminent domain power in connection with the Plan, Cherry Hill's request for a

15

declaration regarding the use of eminent domain in connection with the Plan is not ripe."). Or, TMPA and Johnston may enter into renewed negotiations and come to an agreement that allows TMPA to obtain an easement without resorting to its eminent domain powers. Thus, it is possible that "uncertain or contingent future events" may not occur as anticipated or may not occur at all. *See United Somerset Corp.*, 274 S.W.3d at 139. At the time Johnston filed his original petition and application for injunctive relief, which is the relevant time period for determining whether a claim is ripe for adjudication, Johnston's injury was merely "contingent or remote." *See id.*; *see also Gibson*, 22 S.W.3d at 852 ("Thus the ripeness analysis focuses on whether the case involves 'uncertain or contingent future events that may not occur as anticipated or may not occur at all.'").

Johnston also cites the Texas Commission of Appeals' decision in *Lone Star Gas Co. v. City of Fort Worth*, for the proposition that an injunction is the proper remedy for an "attempt, or threatened attempt, to take private property for public use by virtue of eminent domain" if the eminent domain proceeding "is for any reason void." 98 S.W.2d 799, 801 (Tex. 1936). As TMPA notes, the court in *Lone Star Gas* did not address any issue of ripeness, but instead, due to the "importance of the question to the public at large," considered the case "as if such threat [by the City of Fort Worth] to institute the [eminent domain] proceeding still exists and is imminent." *Id.* at 800.

16

Furthermore, in *Harris County v. Gordon*, the Texas Supreme Court reversed the intermediate appellate court's decision to grant a temporary injunction that prohibited the County from entering Gordon's property on the ground that Gordon has "an adequate remedy at law if it is later determined that Harris County did not have authority to condemn for a fee simple." 616 S.W.2d 167, 169 (Tex. 1981); *In re JDN Real Estate-McKinney L.P.*, 211 S.W.3d 907, 915–16 (Tex. App.—Dallas 2006, orig. proceeding) (noting that Property Code section 21.044(a) allows trial court to award damages to property owner if condemnor did not have right to condemn property and therefore "this statutory remedy provides a property owner with an adequate remedy by appeal if it is later determined the condemnor did not have the authority to condemn the property").

Likewise, in *Texas Bay Cherry Hill*, Cherry Hill sought six declarations relating to the illegality and unconstitutionality of the City's proposed exercise of its eminent domain power. 257 S.W.3d at 393–94. The Fort Worth Court of Appeals, which held that Cherry Hill's declaratory relief claims were not ripe, noted that the trial court's refusal to review these claims "presents no hardship to Cherry Hill, which can assert its declaratory judgment action if and when the City does attempt to exercise its eminent domain power." *Id.* at 394. Similarly, Johnston's claims that TMPA lacked statutory authority to condemn his property and that TMPA lacked a permissible public use for the property would be more

17

properly heard if and when TMPA exercises its eminent domain power by initiating a condemnation proceeding.

We therefore conclude that Johnston's claim for injunctive relief, at this point, presents an "abstract, hypothetical, and remote dispute" that is not ripe for adjudication. *See id.*; *see also United Somerset Corp.*, 274 S.W.3d at 140 (holding that when "the threatened controversy is not unavoidable," declaratory judgment action not ripe for adjudication); *City of Anson*, 216 S.W.3d at 390 ("What might happen if the City's permit application is approved does not present a ripe controversy . . . ."). We hold that the trial court erroneously denied TMPA's plea to the jurisdiction.[4]

We sustain TMPA's first issue.[5]

---

[4] Johnston also challenges TMPA's authority to enter onto his property to conduct surveys and inspections of the property before initiating a condemnation proceeding. We note that "'the authority to enter upon the land to make a preliminary survey' is considered '[a]ncillary' to the power of eminent domain." *Occidental Chem. Corp. v. ETC NGL Transport, LLC*, 01-11-00536-CV, 2011 WL 2930133, at *4 (Tex. App.—Houston [1st Dist.] July 20, 2011, pet. dism'd) (quoting *I.P. Farms v. Exxon Pipeline Co.*, 646 S.W.2d 544, 545 (Tex. App.—Houston [1st Dist.] 1982, no writ)).

[5] Because we conclude that this dispute is not ripe for adjudication and thus no justiciable controversy is presented, we need not address TMPA's second issue: whether it waived its governmental immunity from suit for Johnston's claims. We note that, generally, governmental immunity "does not shield the State from a claim based on an unconstitutional taking of property" because "[t]he Texas Constitution itself waives immunity for the taking, damage, or destruction of property for public use." *Koch v. Tex. Gen. Land Office*, 273 S.W.3d 451, 457 (Tex. App.—Austin 2008, pet. denied) (citing *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007) and *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980));

**Conclusion**

We reverse the order of the trial court and render judgment dismissing Johnston's claims against TMPA.


                                    Evelyn V. Keyes
                                    Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

---

*see also* TEX. CONST. art. I, § 17. We also note, however, that "[g]overnment action does not give rise to a cause of action under article I, section 17, 'in the absence of a current, direct restriction on the property's use.'" *Schriver v. Tex. Dep't of Transp.*, 293 S.W.3d 846, 850 (Tex. App.—Fort Worth 2009, no pet.) (quoting *Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992)). Thus, "while negotiations [for the purchase of the property] are a statutorily-mandated prerequisite to filing a condemnation action, the mere fact that a governmental entity engages in such negotiations does not, without more, trigger a waiver of governmental immunity under article I, section 17." *Id.*