# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00063-CV

**The City of Killeen, Appellant**

**v.**

**Oncor Electric Delivery Company LLC, Appellee**

## FROM THE 146TH DISTRICT COURT OF BELL COUNTY
## NO. 23-DCV-336513, THE HONORABLE JACK WELDON JONES, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

This constitutional suit is unripe, so I respectfully dissent. Ripeness emphasizes the need for a concrete *injury* for a claim to be justiciable. *Southwestern Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020). When deciding whether a suit is ripe, "the focus is on whether 'the facts are sufficiently developed so that an *injury* has occurred or is likely to occur, rather than being contingent or remote.'" *Id.* (emphasis added) (quoting *Waco ISD v. Gibson*, 22 S.W.3d 849, 851–52 (Tex. 2000)). "If the plaintiff's claimed *injury* is based on 'hypothetical facts, or upon events that have not yet come to pass,' then the case is not ripe, and the court lacks subject matter jurisdiction." *Id.* (emphasis added) (quoting *Waco ISD*, 22 S.W.3d at 852). The nature of the plaintiff's alleged injury, whether past or likely to occur, is thus crucial to the analysis.

This makes the nature of takings injuries centrally important to this case, for Oncor's position on ripeness is that because it will soon suffer a takings injury, it must be given

declaratory and injunctive relief now to head off the takings injury at the pass. It pleads that it will suffer a takings injury because it can't be given adequate compensation for its streetlight system and because the system is already put to a public use that the City can't overcome, either scenario allegedly making any taking unconstitutional.

But the nature of takings injuries shows that Oncor and the Court's ripeness analysis misses the mark—the suit here is timed too long in advance of any potential takings injury.

The kind of taking alleged here is one that would be funneled through the Chapter 21 process: "Texas Property Code Chapter 21 governs the State's exercise of its eminent domain power through condemnation." *REME, L.L.C. v. State*, __ S.W.3d __, 2025 WL 567970, at *2 (Tex. Feb. 21, 2025) (per curiam). Under that process, the condemnor may take possession of property even before it has paid the owner for it and even before all defenses to condemnation have been adjudicated. The process was set up by the Legislature, which enjoys wide latitude in this area: "The Legislature's broad authority to prescribe compensatory remedies for takings is well-established, so long as those methods comply with due process and other constitutional requirements." *City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 236 (Tex. 2011); *see also Jim Olive Photography v. University of Houston Sys.*, 624 S.W.3d 764, 771 (Tex. 2021) (Texas case law on takings under Texas Constitution is consistent with federal jurisprudence). "When the Legislature creates such a statutory procedure, recourse may be had to a constitutional suit *only where the procedure proves inadequate*, for it is not the taking of property, as such, that raises constitutional concerns, but the taking of property without just compensation." *City of Dallas*, 347 S.W.3d at 236 (first emphasis added and a second removed); *accord Knick v. Township of Scott*, 588 U.S. 180, 202 (2019) ("[A] government violates the Takings Clause when it takes property without compensation . . . . That does not as a practical matter mean that government action or regulation

2

may not proceed in the absence of contemporaneous compensation. Given the availability of post-taking compensation, barring the government from acting will ordinarily not be appropriate."). "When there exists provision for compensation—or, as here, for the property's return—a constitutional claim is necessarily premature." *City of Dallas*, 347 S.W.3d at 236.

A Chapter 21 suit has two phases, at the end of the first of which special commissioners make findings about the compensation owed to the property owner. *See* Tex. Prop. Code §§ 21.014–.021, 21.042. "After the special commissioners have made an award in a condemnation proceeding, . . . the condemnor may take possession of the condemned property *pending the results of further litigation* if the condemnor," among other things, either "pays to the property owner the amount of damages and costs awarded by the special commissioners or deposits that amount of money with the court subject to the order of the property owner." *See id.* § 21.021(a) (emphasis added). If the condemnor complies with the statutory requirements, it gets possession of the property. *See, e.g.*, *Houston Lighting & Power Co. v. Klein ISD*, 739 S.W.2d 508, 519 (Tex. App.—Houston [14th Dist.] 1987, writ denied). *Afterward*, litigation in the suit may continue, and it is in this latter phase that the property owner may litigate defenses like constitutional inadequacy of compensation, lack of public use, the doctrine of paramount public importance, or the like. *See* Tex. Prop. Code § 21.018; *see, e.g.*, *Harris Cnty. Fresh Water Supply Dist. No. 61 v. Magellan Pipeline Co.*, 649 S.W.3d 630, 647–48 (Tex. App.—Houston [1st Dist.] 2022, pet. denied); *In re State*, 85 S.W.3d 871, 876–77 (Tex. App.—Tyler 2002, orig. proceeding).

This sequencing in a Chapter 21 suit—the condemnor can get possession of the property before the owner has had the chance to fully litigate its defenses around adequate compensation and public use—shows that Oncor's suit is unripe. An owner has not suffered a takings injury *even when it has been sued and the condemnor already has possession of the*

*property* because there is still the latter phase of the Chapter 21 suit. Therefore, it is merely hypothetical here that Oncor is going to suffer any takings injury. *See Atmos Energy Corp. v. Abbott*, 127 S.W.3d 852, 858 (Tex. App.—Austin 2004, no pet.) (ripeness is a question of timing). No Chapter 21 suit has been filed, Oncor can raise its positions in a Chapter 21 suit were one to arise, and it is well settled that Chapter 21 procedure is constitutional and affords the property owner an adequate remedy.[1] *See Joiner v. City of Dallas*, 380 F. Supp. 754, 764–69 (N.D. Tex. 1974), *aff'd*, 419 U.S. 1042 (1974); *Sibley v. Port Freeport*, No. 01-22-00860-CV, 2024 WL 791612, at *4 (Tex. App.—Houston [1st Dist.] Feb. 27, 2024, no pet.) (mem. op.). The City thus says that Oncor's claims would ripen if the City initiates a condemnation proceeding, and I agree.[2] In such a proceeding Oncor could seek the injunctive relief that it seeks here. *See* Tex. Prop. Code §§ 21.003(2), 21.064; *Tonahill v. Gulf States Utils. Co.*, 446 S.W.2d 301, 302 (Tex.

---

[1] Further concerning adequacy of remedies, declaratory and injunctive relief is usually improper, as opposed to condemnation damages awards or condemnation-suit judgments saying that the condemnor cannot take the property. *See, e.g.*, *Knick v. Township of Scott*, 588 U.S. 180, 198–99, 200–01, 205 (2019) (supporting conclusions that "[g]overnments need not fear that our holding will lead federal courts to invalidate their regulations as unconstitutional" and "[a]s long as just compensation remedies are available—as they have been for nearly 150 years—injunctive relief will be foreclosed"); *Harris County v. Gordon*, 616 S.W.2d 167, 169 (Tex. 1981) ("The Court of Civil Appeals wrote that the County did not have the authority to condemn for a fee simple, and on this basis granted the temporary injunction. However, this action ignores the landowner's remedy provided by [Chapter 21 predecessor]. This statutory remedy provides for damages to the landowner for the use of the land when the condemnor does not have the right to condemn. . . . The Gordons have an adequate remedy at law if it is later determined that Harris County did not have authority to condemn for a fee simple. Therefore, the Court of Civil Appeals erred in granting the injunction . . . ."); *In re JDN Real Est.–McKinney L.P.*, 211 S.W.3d 907, 915–16 (Tex. App.—Dallas 2006, orig. proceeding [mand. denied]) (like *Gordon*). All the more reason that for ripeness prudential considerations this suit should be dismissed. *See City of Austin v. Whittington*, 385 S.W.3d 28, 33–34 (Tex. App.—Austin 2007, no pet.) ("In addition to considering the timeliness of the case, a court must also consider whether it *should* decide the issue and not simply whether it *can* decide the issue when determining if a claim is ripe.").

[2] They would ripen also, for example, if the City or its agents physically appropriated or took possession of the property at issue.

1969) (per curiam)[3]; *City of Garland v. Mayhew*, 528 S.W.2d 305, 307–08 (Tex. App.—Tyler 1975, writ ref'd n.r.e.).

Given the nature of takings injuries, Oncor and the Court's reliance on *Patel v. Texas Department of Licensing and Regulation* is misplaced. *Patel*'s ripeness assessment depended on the plaintiffs' receipt of agency warnings of civil penalties and referral to the agency's legal department for "enforcement." *See* 469 S.W.3d 69, 78 (Tex. 2015). The City's actions here differ in kind from *Patel*'s: Penalties are punishments, but use of eminent-domain power is neither punishment nor an "enforcement" action of any sort. *See Holt v. Texas Dep't of Ins.–Div. of Workers' Comp.*, No. 03-17-00758-CV, 2018 WL 6695725, at *7 (Tex. App.—Austin Dec. 20, 2018, pet. denied) (mem. op.) (*Patel* did not extend to let parties "who did not exhaust their administrative remedies *and do not face any administrative enforcement action* . . . pursue a rule challenge asserted as a takings claim" (emphasis added)). The power inheres in the nature of sovereignty, "exists independent of constitutional provision and is a right inherent in organized society itself." *Texas Highway Dep't v. Weber*, 219 S.W.2d 70, 72 (Tex. 1949). The sovereign at common law has for centuries enjoyed the power to take real estate. *See Hidalgo Cnty. Water Improvement Dist. No. 3 v. Hidalgo Cnty. Irrigation Dist. No. 1*, 669 S.W.3d 178, 184 (Tex. 2023); *Welch v. Tennessee Valley Auth.*, 108 F.2d 95, 98 (6th Cir. 1939); *Handley v. Cook*, 252 S.E.2d 147, 152–53 (W.Va. 1979). The state and federal constitutions did not take that power away; they simply conditioned it on paying adequate compensation, and the Texas Constitution conditioned

---

[3] *Tonahill* bears special mention because the same kind of void-proceeding claim that Oncor raises here was also raised there. The Supreme Court said that the void-proceeding claim should be heard by the court that was hearing the related condemnation action "in an appeal from the award of the commissioners" appointed in that action. *See* 446 S.W.2d 301, 302 (Tex. 1969) (per curiam). If a void-proceeding claim can thus be heard within the Chapter 21 suit, then there is no need for Oncor's suit now.

it further on public use. The property owner's remedy thus is not pre-condemnation halting the sovereign but adequate compensation for its taking.[4] Because it may press defenses about adequate compensation and public use in the latter phase of any Chapter 21 suit that may arise, Oncor is neither injured nor nearly injured like the *Patel* plaintiffs were. *See City of Austin v. Whittington*, 385 S.W.3d 28, 33–34 (Tex. App.—Austin 2007, no pet.) ("In addition to considering the timeliness of the case, a court must also consider whether it *should* decide the issue and not simply whether it *can* decide the issue when determining if a claim is ripe."); *accord Texas Mun. Power Agency v. Johnston*, 405 S.W.3d 776, 782 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *see also Texas Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 394 (Tex. App.—Fort Worth 2008, no pet.) ("The declaratory judgment claim is not fit for judicial review, and the trial court's refusal to review it presents no hardship to [owner], which can assert its declaratory judgment action if and when the City does attempt to exercise its eminent domain power.").

---

[4] This is where Oncor raises *Lone Star Gas Co. v. City of Fort Worth*, 98 S.W.2d 799 (Tex. [Comm'n Op.] 1936), but that case is neither a ripeness case nor a governmental-immunity case, omitting mention of either concept. Even if it were such a case, it has been superseded by nearly nine decades' worth of ripeness and immunity decisions from the Supreme Court of Texas. Clarity from the Supreme Court on *Lone Star Gas* would be helpful because this is not the first time that *Lone Star Gas* has vexed this Court. *See Texas Bldg. Owners & Managers Ass'n v. Public Util. Comm'n*, 110 S.W.3d 524, 537 (Tex. App.—Austin 2003, pet. denied) ("[T]he specific holding in *Lone Star Gas* is not entirely clear . . . . As interpreted by one court of appeals, the holding . . . does not stand for the broad proposition for which the Building Owners cite it: 'The ultimate holding of *Lone Star* is that some process must be established, either by general statute or through a city's charter, which provides security for any utility that may be condemned.' Finally, if *Lone Star* required that a statute authorizing a taking also provide written details for the method of determining compensation—which under the circumstances of the regulatory scheme at issue would require the legislature to spell out in the Statutes something akin to the Commission's rules—then *Lone Star* would appear to conflict with the supreme court's more recent holding in *Barshop*[ *v. Medina County Underground Water Conservation District*, 925 S.W.2d 618 (Tex. 1996)]." (internal citation omitted) (quoting *City of Houston v. Southern Water Corp.*, 678 S.W.2d 570, 572 (Tex. App.—Houston [14th Dist.] 1984, writ dism'd))).

The Court's opinion thus improperly relies on *Patel* to support creating a court split with *Johnston* and *Texas Bay Cherry Hill*. The charge is that *Johnston* pre-dates *Patel*, but *Patel* is not the proper parallel for alleged takings injuries. Moreover, *Johnston* uses every bit of the same ripeness rules as *Patel* does. *Patel* instructs that "[u]nder the ripeness doctrine, courts must 'consider whether, *at the time a lawsuit is filed*, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote'" and that "the ripeness analysis focuses on whether a case involves uncertain or contingent future events that may not occur as anticipated or may not occur at all." 469 S.W.3d at 78 (quoting and citing *Waco ISD*, 22 S.W.3d at 851–52). *Johnston* recites and applies the very same rules. *See* 405 S.W.3d at 781–82 (citing and quoting *Waco ISD*, 22 S.W.3d at 851–52). We thus should stick with *Johnston* and *Texas Bay Cherry Hill* and with the authorities from other jurisdictions that have dismissed as unripe claims much like Oncor's. *See, e.g.*, *Mariner's Cove Townhomes v. U.S. Army Corps of Eng'rs*, Civil Action No. 08-3198, 2009 WL 211147, at \*1–2 (E.D. La. Jan. 27, 2009); *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 215 F. Supp. 2d 1130, 1134 (D. Colo. 2002), *aff'd*, 319 F.3d 1211 (10th Cir. 2003); *Shipe v. Public Wholesale Water Supply Dist. No. 25*, 210 P.3d 105, 112–13 (Kan. 2009).

The Court's opinion also notes when assessing ripeness that the City's council has not yet taken and succeeded on the vote required by Local Government Code section 2206.053(a) before the City may file a condemnation petition. *See Johnston*, 405 S.W.3d at 783. This vote is an important step in the process—if it does not even happen, or if it fails, then there will be no condemnation. All the more reason that Oncor's suit here, pre-vote, is unripe. *See Southwestern Elec. Power*, 595 S.W.3d at 683 (suit is unripe if plaintiff's claimed injury is "based on 'hypothetical facts, or upon events that have not yet come to pass'" (quoting *Waco ISD*,

22 S.W.3d at 852)); *MicroBios, Inc. v. Garner*, No. 07-23-00451-CV, 2024 WL 4116365, at \*2 (Tex. App.—Amarillo Sept. 6, 2024, no pet.) (mem. op.) ("Simply put, the act feared by Garner remained contingent upon a vote which may or may not transpire, and Garner failed to prove that anyone engaged or would engage in the acts sought to be enjoined. What we have here is merely a possibility or fear of its occurrence, nothing more. So . . . we conclude that the feared act was not ripe for curtailment through a temporary injunction,"); *State v. City of Austin*, No. 03-20-00619-CV, 2021 WL 1313349, at \*8–9 (Tex. App.—Austin Apr. 8, 2021, no pet.) (mem. op.) (suit against city and county was "the epitome of an unripe claim" partly because suit sought to enjoin city's and county's orders that had not yet been issued); *City of Terrell v. Edmonds*, Nos. 05-19-01248-CV, 05-19-01382-CV, 2020 WL 5361978, at \*5–6 (Tex. App.—Dallas Sept. 8, 2020, pet. denied) (mem. op.) (suit to enjoin municipal annexation was unripe partly because city council had not yet voted on annexation); *see also Perry v. Del Rio*, 66 S.W.3d 239, 255 (Tex. 2001) (ripeness of suit whose alleged injury depended on Legislature's action or inaction would be "formidabl[y]" difficult to show partly because "no one can speak with authority about what the Legislature will and will not do"; "[t]hat body can speak only through a vote of its members, who may themselves change positions"; and "predictions about the probable course of the legislative process are notoriously unreliable, as anyone remotely familiar with the process well knows").

In all, Oncor's suit for declaratory and injunctive relief to ward off a condemnation whose Chapter 21 process has not even begun is unripe. Because we have not dismissed Oncor's claims as unripe, I respectfully dissent.

                                             _____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Filed: February 28, 2025