ACCEPTED
14-14-00823-cv
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
3/9/2015 4:12:59 PM
CHRISTOPHER PRINE
CLERK

## NO. 14-14-00823-CV

IN THE COURT OF APPEALS FOR THE FOURTEENTH DISTRICT
AT HOUSTON, TEXAS

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
3/9/2015 4:12:59 PM
CHRISTOPHER A. PRINE
Clerk

**TEXAS TRANSPORTATION COMMISSION AND TED HOUGHTON, IN HIS OFFICIAL CAPACITY AS CHAIR OF THE TEXAS TRANSPORTATION COMMISSION,**

Appellants,

**V.**

**CITY OF JERSEY VILLAGE,**

Appellee.

On Appeal from the 165th District Court
of Harris County, Texas; Cause No. 2012-59338

**REPLY BRIEF OF APPELLANTS TEXAS TRANSPORTATION COMMISSION AND TED HOUGHTON, IN HIS OFFICIAL CAPACITY AS CHAIR OF THE TEXAS TRANSPORTATION COMMISSION**

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for
Civil Litigation

RANDALL K. HILL
Assistant Attorney General
Chief, Transportation Division

ANTHONY G. BROCATO, JR.
Assistant Attorney General
State Bar No. 03039001
anthony.brocato@texasattorneygeneral.gov
SUSAN DESMARAIS BONNEN
Assistant Attorney General
State Bar No. 05776725
susan.bonnen@texasattorneygeneral.gov
Transportation Division
P. O. Box 12548
Austin, Texas 78711-2548
Telephone:  (512) 463-2004
Fax Number:  (512) 472-3855

COUNSEL FOR APPELLANTS

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

RESPONSE TO THE CITY'S STATEMENT OF FACTS. . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I.    The City's declaratory judgment claims are barred by the State's sovereign immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.    The City's general claim for declaratory relief is barred by sovereign immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            1.    The City's claim for general declaration of rights is barred by sovereign immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            2.    The City is seeking monetary relief, which is barred by sovereign immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            3.    The City is seeking to control State action and thus, its claims as barred by sovereign immunity. . . . . . . . . . . . 11

        B.    The City's alleged *ultra vires* claims are barred by sovereign immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            1.    The City's alleged *ultra vires* claims against the Texas Transportation Commission are barred by sovereign immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            2.    The City's alleged *ultra vires* claims against Houghton are barred by sovereign immunity. . . . . . . . . . . . . . . . . . . 12

                a.    Section 203.092 must be strictly construed. . . . . 12

    b.  Section 203.092 does not require reimbursement for replacement easements. . . . . . . . . . . . . . . . . . . 14

      i.  The plain language of § 203.092 does not require reimbursement for replacement easements.. . . . . . . . . . . . . . . . . . . . . . . . . 14

      ii.  Reimbursement for replacement easements is not property attributable to relocation.. . . 16

      iii.  The City does not have a compensable interest in the land occupied by the facilities to be relocated. . . . . . . . . . . . . . . . . . . . . . 18

    c.  Construction of Section 203.092 as requiring reimbursement for replacement easements would cause the State to pay betterment costs in violation of the Texas Constitution.. . . . . . . . . . . . . . . . . . 21

  II.  The City's claim under Article 1, Section 17 of the Texas Constitution is barred by the State's sovereign immunity. . . . . . . . . . . . . . . . . . 22

  III.  The City's claims regarding Segment 7 are not ripe. . . . . . . . . . . . . 23

  IV.  The City's claim for attorneys fees is barred by the State's sovereign immunity.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

APPENDIX

A. Grizzard easement

# INDEX OF AUTHORITIES

**Cases**                                                               **Page**

*Anderson v. Truelove*, 446 S.W.3d 87
(Tex. App.—Houston [1st Dist.] 2014, no pet.). . . . . . . . . . . . . . . . . . . . . . . 22

Argyle Indep. Sch. Dist. v. Wolf, 234 S.W.3d 229
(Tex. App.—Fort Worth 2007, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*City of El Paso v. Heinrich,* 284 S.W.3d 366 (Tex. 2009). . . . 7, 8, 9, 10, 11, 21,24

*City of Grand Prairie v. Am. Tel. & Tel. Co.*,
405 F.2d 1144 (5th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*City of Houston v. Williams*, 216 S.W.3d 827 (Tex. 2007). . . . . . . . . . . . . . . . 11

*City of Hutchins v. Prasifka*, 450 S.W.2d 829 (Tex. 1970) . . . . . . . . . . . . . . . . 20

*City of San Antonio v. TPLP Office Park Props.*,
218 S.W.3d 60 (Tex. 2007)(per curium) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770 (Tex. 2006) . . . . 20

*Edwards v. Kaye,* 9 S.W.3d 310
(Tex. App—Houston [14th Dist.] 1999, pet. denied). . . . . . . . . . . . . . . . . . 16

*Elledge v. Friberg–Cooper Water Supply Corp.*,
240 S.W.3d 869 (Tex. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Harris Cnty. Flood Control Dist. v. Shell Pipe Line Corp.*,
591 S.W.2d 798 (Tex. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468 (Tex. 2012) . . . . . . . . . 23

*Houston Lighting & Power Co. v. State*, 925 S.W.2d 312
(Tex. App.—Houston [14th Dist.] 1996, writ denied). . . . . . . . . . . . . . . . . . 19

*Hubert v. Davis*, 170 S.W.3d 706 (Tex. App.—Tyler 2005, no pet.) . . . . . . . . . . 19

*John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst,*
90 S.W.3d 268 (Tex. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Magnolia Pipe Line Co. v. City of Tyler,* 348 S. W.2d 537
(Tex. Civ. App.—Texarkana 1961, writ ref'd). . . . . . . . . . . . . . . . . . . . . 13, 19

*McLane Co., Inc. v. Strayhorn*, 148 S.W.3d 644
(Tex. App.—Austin 2004, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . 22

*Millwee-Jackson Joint Venture v. Dall. Area Rapid Transit,*
350 S.W.3d 772 (Tex. App.—Dallas 2011, no pet.). . . . . . . . . . . . . . . . 23

*Montrose Mgmt. Dist. v. 1620 Hawthorne, Ltd.,*
435 S.W.3d 393 (Tex. App.—Houston 2014, pet. filed). . . . . . . . . . . . . . 9

*Robbins v. Limestone Cnty.*, 268 S.W. 915 (Tex. 1925). . . . . . . . . . . . . . . . . . . 18

*R.R. Comm'n. of Tex. v. Aluminum Co. of Am.,*
380 S.W.2d 599 (Tex 1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Rusk State Hosp. v. Black*, 392 S.W.3d 88 (Tex. 2012). . . . . . . . . . . . . . . . . . . 22

*State v. City of Austin*, 331 S.W.2d 737 (Tex. 1960). . . . . . . . . . . . . . . . . . . 16, 17

*State v. Durham*, 860 S.W.2d 63 (Tex. 1993). . . . . . . . . . . . . . . . . . . . . . . . . 20

*Sw. Bell Tel., L.P. v. Emmett*, 401 S.W.3d 826
(Tex. App.—Houston [14th Dist.] 2013, pet. granted). . . . . . . . . . . . . . . 13

*Sw. Bell Tel., L.P. v. Harris Cnty. Toll Rd. Auth.*,
282 S.W.3d 59 (Tex. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Tex. Dep't of Parks & Wildlife v. Miranda,*
133 S.W.3d 217 (Tex. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Tex. Dep't of Transp. v. City of Sunset Valley,*
146 S.W.3d 637(Tex. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Tex. Dep't of Transp. v. Sefzik,*
    355 S.W.3d 618 (Tex. 2011) (per curiam). . . . . . . . . . . . . . . . . . . . . . . 10, 24

*Tex. Lottery Comm'n v. First State Bank of DeQueen*,
    325 S.W.3d 628 (Tex. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Tex. Mun. Power Agency v. Johnson,* 405 S.W.3d 776
    (Tex. App.—Houston [1st Dist.] 2013, no pet.). . . . . . . . . . . . . . . . . . 23, 24

*Tex. Natural Res. Conservation Comm'n v. IT-Davy,*
    74 S.W.3d 849 (Tex. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Tex. Parks & Wildlife Dep't v. Sawyer Trust,*
    354 S.W.3d 384 (Tex. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849 (Tex. 2000). . . . . . . . . . . . . . 24

*Zapata Cnty. Appraisal Dist. v. Coastal Oil & Gas Corp.,*
    90 S.W.3d 847 (Tex. App.—San Antonio 2005, pet. denied). . . . . . . . . . 16

**Constitutional Provisions, Statutes, and Rules**

43 Tex. Admin Code § 21.34. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

43 Tex. Admin. Code § 21.36. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

43 Tex. Admin Code § 21.37. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

43 Tex. Admin Code § 21.38. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Tex. Civ. Prac. & Rem. Code § 37.004. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Tex. Civ. Prac. & Rem. Code § 37.006. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Tex. Const. art. I, § 17. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Tex. Gov't Code § 311.034. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tex. Transp. Code § 203.092. . . . . . . . . . . . . . . . . . . . . . . 4, 7, 12, 13, 14, 17, 21

Tex. R. App. P. 38.01. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

23 C.F.R. § 645.105.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

23 C.F.R. § 645.111.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

23 C.F.R. § 645.201–.215. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

23 C.F.R. § 645.207.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

23 U.S.C. § 109. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## Other

Annotation, *Right of Public Body to Compensation Where Property Held by it is Taken for Another Public Purpose*, 56 A.L.R. 365 (2011).. . . . . . . . . . . . . . . . . . 18

4A Julius L. Sackman, *Nichols on Eminent Domain* (3d ed. 2004). . . . . . . . . . . 18

29A C.J.S. *Eminent Domain* § 126 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

NO. 14-14-00823-CV

_____

IN THE COURT OF APPEALS FOR THE FOURTEENTH DISTRICT
AT HOUSTON, TEXAS

_____

**TEXAS TRANSPORTATION COMMISSION AND TED HOUGHTON,
IN HIS OFFICIAL CAPACITY AS CHAIR OF THE TEXAS
TRANSPORTATION COMMISSION,**
Appellants,

**V.**

**CITY OF JERSEY VILLAGE,**
Appellee.

_____

On Appeal from the 165th District Court
of Harris County, Texas; Cause No. 2012-59338

_____

**REPLY BRIEF OF APPELLANTS TEXAS TRANSPORTATION
COMMISSION AND TED HOUGHTON, IN HIS OFFICIAL CAPACITY
AS CHAIR OF THE TEXAS TRANSPORTATION COMMISSION**

_____

TO THE HONORABLE COURT OF APPEALS:

Appellants, the Texas Transportation Commission (TTC) and Ted Houghton,

in his official capacity as Chair of the Texas Transportation Commission (Houghton),

(collectively TxDOT or the State) submit this reply brief requesting that the claims

of Appellee City of Jersey Village (City) be dismissed for want of jurisdiction.

## RESPONSE TO THE CITY'S STATEMENT OF FACTS

**The Court should not consider argument, and unsupported or inaccurate factual statements, contained in the City's Statement of Facts.**

Texas Rule of Appellate Procedure 38.1 provides that briefs must state the facts "without argument," and the statement of facts must be supported by record references.

Contrary to Rule 38.1, the City makes argument throughout its Statement of Facts. For example, the City repeatedly asserts that it owns and holds a compensable property interest in certain public utility easements, and that TxDOT is legally required to reimburse it for replacement easements. *See* Brief of City at 2–3, 5–6, 9–10. These assertions are argument rather than facts and should not be considered as facts by the Court.

The City's assertion that the need to relocate utilities because the public highway widening project "*forces* the City to acquire, at additional cost, replacement easements for the utility lines to run under new properties," *see* Brief of City at 3 (emphasis added), is inaccurate. The City concedes that it could relocate its utility lines in the State's new right of way but has chosen not to do so. CR 32.

The City's claims that it would be unable to effectively service its utility lines if they were placed in the State's new right of way are not supported by any record references. *See* Brief of City at 3–5. And the statement that "the City would be

required to obtain prior permission from TxDOT each and every time it needs to access its utility lines for repair, maintenance or replacement," s*ee* Brief of City at 3, is simply untrue. Instead, TxDOT's regulations provide that utilities give 48-hour *notice* before engaging in non-emergency construction or maintenance, or that they give *notice* as soon as possible in an emergency situation. *See* 43 Tex. Admin. Code § 21.38(a)(4).[1] And of course, the utility must use proper traffic control measures when engaged in such work to protect the safety of the traveling public. *See* § 21.38(c). These regulations are consistent with TxDOT's recognition that "[u]nder state law, public utilities have a right to operate, construct, and maintain their facilities over, under, across, on, or along highways, subject to highway purposes." *See* 43 Tex. Admin. Code § 21.36(a).

Moreover, the City's characterization of TxDOT as a "recalcitrant state agency", *see* Brief of City at 4 n.2, is both inappropriate and unjustified. The fact that TxDOT, based on both its policy and its understanding of governing law, has refused to reimburse the City for replacement of non-exclusive public utility easements with

---

[1] *Permission* is only required when a utility wishes to cut into the pavement or concrete riprap. *See* § 21.38(a)(5). However, construction and maintenance generally will not require a utility to cut into the State's pavement or concrete since longitudinal utility facilities are not placed under pavement or concrete. *See* 43 Tex. Admin. Code § 21.37(b)(7) ("On highways with frontage roads, longitudinal utility facility installations may be located between the frontage road and the right of way line. Utility facilities shall not be placed or allowed to remain in the center median, outer separation, or beneath any pavement, including shoulders.").

exclusive private easements, is not proof that TxDOT fails to cooperate with utility companies in their maintenance of utility lines within State right of way.

Contrary to the City's suggestion, *see* Brief of City at 6, 7, TxDOT has not previously conceded that Section 203.092 applies to the City's request for reimbursement for replacement of public utility easements with private easements. And TxDOT does not claim in its Brief that it has never seen the "Grizzard easement." *See* Brief of City at 9. Instead, TxDOT noted that the City did not submit the Grizzard easement when it submitted proof of a property interest as part of Utility Agreement U14331. *See* Brief of TxDOT at 10–11; *see also* CR 116–25. The actual facts regarding TxDOT's so-called concession and the Grizzard easement are as follows.

Prior to the City's filing of suit,[2] TxDOT repeatedly told the City that it could avoid incurring the cost of new easements by relocating its utilities within the State's new right of way between the frontage road and the new right of way line. CR 133–36. However, the City indicated that it did not want to relocate its utilities within the State's new right of way. CR 133, 135. TxDOT also told the City that TxDOT could not purchase right of way on behalf of another entity and that only exclusive ownership rights in existing easements were eligible for reimbursement. CR 134–135.

---

[2] *E.g.*, the record includes a letter forwarded to the City nearly a year before suit was filed. CR 133–37.

In its letter to the City, TxDOT included an excerpt from its Right of Way Utility Manual which provides that a "PUE [Public Utility Easement] does not convey a replacement right of way interest to any occupants of the PUE." CR 136.

The City responded in letters requesting that it be provided with either in-kind easement replacement or reimbursement for the cost to obtain replacement easements. CR 141, 152–53. The City also provided plats and deeds that, according to the City, demonstrated that the City had a compensable ownership interest in the land that obligated TxDOT to reimburse it for the cost of replacement easements. CR 140–41, 153. As indicated by the City, one of the documents provided to TxDOT would have been the "Grizzard easement." *See* Brief of City at 9. The Grizzard easement is an easement that was actually conveyed to the City, and not a public utility easement. CR 719–22. Thus, the Grizzard easement evidences an ownership interest held by the City that TxDOT would consider reimbursable because it would be compensable in eminent domain. However, the City did not submit the Grizzard easement when it submitted proof of a property interest as part of Utility Agreement U14331. *See* Brief of TxDOT at 10–11; *see also* CR 116–25. The City's suggestion that this suit involves both public and private easements, s*ee* Brief of City at 3 n.1, 9–10, 30, is not accurate and not supported by the record. Rather, this suit involves only the City's request for reimbursement of the cost to replace the non-exclusive public utility

5

easements referenced in Utility Agreement U14331 with exclusive private easements. *See* CR 116–125.

TxDOT responded to the City in a letter stating that the majority of the information provided by the City did not "support cost participation by the State in the value of the existing easements" because the easements were either public utility easements or were easements owned by someone other than the City. CR 156. TxDOT noted that it "cannot provide an exclusive easement for replacement of a non-exclusive public utility easement granted through the City platting requirements." *Id*. However, TxDOT indicated that the Grizzard easement was the one exception that was "eligible for replacement value subject to TxDOT policies and procedure." CR 157.[3] The Grizzard easement was eligible for replacement value because it was an exclusive private easement conveyed to the City and not "a non-exclusive public utility easement granted through the City platting requirements." *See* CR 156–57.[4]

_____

[3]TxDOT's description of the easement makes it clear that it is referencing the Grizzard easement. CR 156–57. The eligible easement is described as an easement 10 feet wide and approximately 432 feet long containing a 12-inch waterline. CR 157. The Grizzard easement is an easement that is 10 feet wide and approximately 432 feet long, CR 721, for a 12-inch waterline, CR 719 (The easement sketch states that the easement is ten feet wide and that it consists of 4,320 square feet. Thus, the easement would have to be 432 feet long. In addition the length of the northern boundary is a total of 431.97 feet long (85.14 + 346.83) and the southern boundary is a total of 432.05 feet long (80.06 + 351.99). CR 721. Attached as Appendix A is a copy of the easement with the relevant numbers highlighted in yellow.)

[4]In spite of TxDOT's recognition of the Grizzard easement as an exception, the City failed to submit the Grizzard easement as proof of property interest or to provide proof of the value of the Grizzard easement when it submitted Utility Agreement U14331. *See* CR 75–126. The only documents submitted as part of Utility Agreement U14331 were documents evidencing public utility easements. *See id.*

This exception was consistent with TxDOT's position both before and after suit was filed and does not represent a concession that Section 203.092 applies to the City's request for reimbursement for non-exclusive public utility easements.

## ARGUMENT

**I.      The City's declaratory judgment claims are barred by the State's sovereign immunity.**

**A.      The City's general claim for declaratory relief is barred by sovereign immunity.**

**1.      The City's claim for a general declaration of rights is barred by sovereign immunity.**

The City wrongly asserts that the Texas Supreme Court recognizes a waiver of immunity under the Uniform Declaratory Judgments Act (UDJA) for suits seeking a declaration construing a statute. *See* Brief of City at 12, 15, 35–36. In *City of El Paso v. Heinrich*, the Supreme Court rejected the assertion that the UDJA § 37.004(a)'s language regarding construction or validity of a statute constitutes a waiver of immunity. *See* Tex. Civ. Prac. & Rem. Code § 37.004(a); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370–71 (Tex. 2009). Instead, it held that declaratory relief could be sought to require state officers to comply with statutory or constitutional provisions, referred to as the *ultra vires* exception. *See id.* at 371–72. Such claims do not implicate immunity because they are not claims against the state, but instead are claims to require state officers to comply with the law. *Id.* at 371–73. In addition, the

7

Supreme Court recognized that the UDJA's § 37.006(b) waived immunity of governmental entities "[f]or claims challenging the validity of ordinances or statutes." *Id*. at 373 n.6.

In 2010, a year after the *Heinrich* decision, the Supreme Court decided *Texas Lottery Commission v. First State Bank of DeQueen*, 325 S.W.3d 628 (Tex. 2010). *DeQueen* involved "a challenge to the validity of a statute." *Id*. at 633. In discussing *Heinrich*, the Court explained that in *Heinrich* it had "distinguished between claims seeking declaratory relief in an *ultra vires* suit, . . . and suits challenging the validity of an ordinance or statute" under UDJA § 37.006. *Id*. at 633–34. The Court also specifically cited *Heinrich's* holding that the UDJA's § 37.006 waived immunity of governmental entities for claims challenging the *validity* of ordinances or statutes. *Id*. at 633–34 & n.4.

The City asserts that *DeQueen* supports a waiver of sovereign immunity because *DeQueen* rejected the Lottery Commission's argument that immunity "applies only to suits involving constitutional invalidation and not to those involving statutory interpretation." *See* Brief of City at 35. However, the City misunderstands the argument made by the Lottery Commission in *DeQueen*. The Commission's argument was that § 37.006(b) only waived immunity for claims that a statute was invalid because it violated the Constitution, and not for claims that a statute was invalid for other reasons, such as the statute in *DeQueen* that was found invalid

because it conflicted with another statute.[5] The Court rejected the Commission's distinction. *DeQueen*, 325 S.W.3d at 634–35.[6] However, the suggestion that the Court's rejection of the Commission's argument constitutes recognition of a wholesale waiver of immunity for statutory construction claims is not supported by *Heinrich*, *DeQueen* or the Supreme Court opinions following them.[7]

In 2011, the Supreme Court issued two more opinions in which it discussed the UDJA and immunity. In *Texas Parks and Wildlife Department v. Sawyer Trust*, 354 S.W.3d 384 (Tex. 2011), the Supreme Court again rejected the claim that § 37.004(a) waived immunity from suit for a declaration of rights under a statute. *See id.* at 388 ("[T]here is no general right to sue a state agency for a declaration of rights."). Instead, it held that the only waiver of immunity contained in the UDJA was under § 37.006(b) for claims challenging the *validity* of ordinances or statutes. *Id.* Other than the waiver under § 37.006(b), the Court declined to recognize any other waivers:

---

[5]Section 37.006(b) provides: "In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and *if the statute*, ordinance, or franchise *is alleged to be unconstitutional*, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard." Tex. Civ. Prac. & Rem. Code § 37.006(b) (emphasis added).

[6]The Court also rejected the Commission's argument that § 37.006(b) only waived the immunity of a municipality. *See DeQueen*, 325 S.W.3d at 634.

[7]TxDOT acknowledges that the City also cites this Court's opinion in *Montrose Management District v. 1620 Hawthorne, Ltd.*, 435 S.W.3d 393 (Tex. App.—Houston 2014, pet. filed). However, given that the Court dismissed claims because they sought relief for actions taken under a statute, that a petition for review is currently pending in *Montrose*, and in light of Supreme Court jurisprudence, the Court's discussion in *Montrose* of waiver for construction of statutes should be treated as non-binding dicta. *See id.* at 404.

9

> While the DJA waives sovereign immunity for certain claims [those challenging the validity of ordinances or statutes], it is not a general waiver of sovereign immunity. But generally, the DJA does not alter a trial court's jurisdiction. Rather, the DJA is merely a procedural device for deciding cases already within a court's jurisdiction. And a litigant's couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit. Consequently, sovereign immunity will bar an otherwise proper DJA claim that has the effect of establishing a right to relief against the State for which the Legislature has not waived sovereign immunity.

*Sawyer Trust*, 354 S.W.3d at 388 (internal citations and quotation marks omitted).

In *Texas Department of Transportation v. Sefzik*, 355 S.W.3d 618 (Tex. 2011), Sefzik argued that actions seeking a declaration of rights were exempt from the doctrine of sovereign immunity. *See id.* at 621. Pointing to its holding in *Heinrich*, the Court disagreed: "[In *Heinrich*] we necessarily concluded that the UDJA does not waive the state's sovereign immunity when the plaintiff seeks a declaration of his or her rights under a statute or other law." *See id.* And, as in *Heinrich*, the Court recognized only two allowable options for declaratory relief against the State: a claim against state officials under the *ultra vires* exception and "a declaratory judgment action that challenges the validity of a statute." *See id.* at 622.

### 2. The City is seeking monetary relief, which is barred by sovereign immunity.

The City suggests that its suit is not one for money damages because "[n]o money damages are sought as relief in this case," and "no fiscal liability will be imposed on the State for past damages pursuant to existing utility agreements with

10

the City." *See* Brief of City at 39–40. However, on the other hand, the City admits that it intends to utilize the judgment to force TxDOT to execute a new or modified contract regarding Segment 6 that will include the reimbursement for replacement easements that was not included in already-executed Utility Agreement U14331. *See* Brief of City at 40; *see also* CR 623–24 ("the City will rely on the declaratory judgment and execute a new or modified utility agreement with TxDOT for Segment 6"). The City's suit is no different in kind from *City of Houston v. Williams*, 216 S.W.3d 827 (Tex. 2007), in which retired firefighters brought a declaratory judgment action against the City to recover amounts allegedly previously withheld from lump-sum termination payments in violation of the Local Government Code. *See Heinrich*, 284 S.W.3d 366, 374 (discussing *Williams*). In *Williams*, the Court held that retrospective monetary claims are barred by immunity. *Heinrich*, 284 S.W.3d at 374. Likewise here, the City's attempts to recover amounts withheld from Utility Agreement U14331 are barred by immunity.

### 3. The City is seeking to control State action and thus, its claims are barred by sovereign immunity.

Contrary to the City's claims, its suit seeks to impose liability on the State for reimbursement for replacement easements. The City admits as much when it says it intends to utilize the judgment to force TxDOT to execute a new or modified contract regarding Segment 6 that will include the reimbursement for replacement easements,

11

and to require reimbursement for replacement easements in new and future contracts regarding Segment 7. *See* Brief of City at 40. Thus, it is an attempt to control state action by imposing liability on the State. *See Tex. Natural Res. Conservation Comm'n v. IT-Davy,* 74 S.W.3d 849, 855–56 (Tex. 2002). Such claims are barred by sovereign immunity. *Id.* at 856.

**B.    The City's alleged *ultra vires* claims are barred by sovereign immunity.**

**1.    The City's alleged *ultra vires* claims against the Texas Transportation Commission are barred by sovereign immunity.**

The City effectively concedes that its *ultra vires* claims against the Texas Transportation Commission are barred by sovereign immunity. *See* Brief of City at 14 (recognizing that ultra vires suits must be brought against state officials.) Thus, the trial court was without jurisdiction to enter its order against the Texas Transportation Commission.

**2.    The City's alleged *ultra vires* claims against Houghton are barred by sovereign immunity.**

**a.    Section 203.092 must be strictly construed.**

The Supreme Court has held that statutes such as § 203.092 must be strictly construed. *See Sw. Bell Tel., L.P. v. Harris Cnty. Toll Rd. Auth.*, 282 S.W.3d 59, 64 (Tex. 2009). The City concedes that section 203.092 must be strictly construed but asserts that under strict construction statutes must be given their plain meaning. *See*

Brief of City at 18. Nonetheless, the plain meaning of § 203.092 is that it doesn't include reimbursement for replacement easements. The City also suggests the *Harris County Toll Road Authority* decision undermines TxDOT's position because it indicates that a utility may be eligible for reimbursement under § 203.092 if the utility has a compensable property interest in the land occupied by the facility to be relocated. *See* Brief of City at 19–20 n.3. Far from undermining TxDOT's position, the Supreme Court's decision provides authoritative support since it equates having a "compensable property interest in the land occupied by the facility to be relocated" with the facts in *Magnolia Pipe Line Co. v. City of Tyler*, 348 S.W.2d 537, 543 (Tex. Civ. App.—Texarkana 1961, writ ref'd), where a utility was entitled to reimbursement because it had purchased easements from private owners. *See Harris Cnty. Toll Rd. Auth.*, 282 S.W.3d at 66.

In addition, to the extent that § 203.092 waives the State's sovereign immunity as to utility facility relocation costs, such waiver must be clear and unambiguous. *See* Tex. Gov't Code § 311.034. The City fails to explain how § 203.092 could constitute a clear and unambiguous waiver of immunity for reimbursement of the cost to replace non-exclusive public utility easements with exclusive private easements. The City also does not address this Court's opinion in *Southwestern Bell Telephone, L.P. v. Emmett*, 401 S.W.3d 826 (Tex. App.—Houston [14th Dist.] 2013, pet. granted), in which the Court strictly construed another relocation statute.

### b. Section 203.092 does not require reimbursement for replacement easements.

#### i. The plain language of § 203.092 does not require reimbursement for replacement easements.

The City urges that the plain language of § 203.092 requires reimbursement for replacement easements. *See* Brief of City at 17–21, 24–27. Yet § 203.092 never even mentions replacement easements. Instead, it only references facilities. The City suggests that if the Legislature had intended to exclude replacement easements it would have discussed them in subsection (d)'s list of deductions. *See* Brief of City at 19–20. However, there is no reason to provide for deductions from reimbursement for replacement easements when the statute doesn't contemplate any reimbursement for replacement easements. If the statute was intended to include reimbursement for replacement easements there most surely would be something in the statute delineating what type of property interest and how much property would be reimbursable. And, contrary to the City's claim, s*ee* Brief of City at 20, reimbursement for replacement easements would do much more than preserve the City's status quo. The City's right of access to non-exclusive public utility easements that are not compensable would be replaced with exclusive private easements that could be compensable if there was ever a need to further widen the highway.

Federal regulations do not support the City's position. *See* Brief of City at 24–27. The City points out that 23 C.F.R. § 645.105 defines relocation as "the

14

adjustment of utility facilities required by the highway project" which includes among other things, "acquiring necessary right-of-way on the new location." *See* Brief of City at 24. The City suggests that this phrase refers to reimbursement for replacement easements. *See id.* However, "acquiring necessary right-of-way on the new location" is a reference to the government's own acquisition of right-of-way in which to place all relocated utilities as part of a roadway project, and not reimbursement to specific utilities for replacement easements. *See* 23 C.F.R. § 645.105.[8] Federal participation in the cost of replacement easements is governed by 23 Code of Federal Regulations § 645.111(a)(1) which requires that a utility hold an interest that is compensable in eminent domain.

The City also points to 43 Texas Administrative Code § 21.34 which provides that where federal or state law prescribes a "higher degree of protection for highway facilities or the traveling public" than the regulations, then that law controls. *See* Brief of City at 24–25. This provision has no relevance to the City's argument.

---

[8]*See also* 23 U.S.C. § 109(l); 23 C.F.R. §§ 645.201-.215. 23 U.S.C. § 109(l) prescribes standards to follow in accommodating utility facilities in the highway right-of-way. 23 C.F.R. §§ 645.201-.215 prescribe policies and procedures for accommodating utility facilities in the right-of-way of Federal-aid or direct Federal highway projects. Both 23 U.S.C. § 109(l)(2)(B) and 23 C.F.R. §§ 645.207 define "right-of-way" as "real property, or interests therein, acquired, dedicated or reserved for the construction, operation, and maintenance of a highway."

### ii. Reimbursement for replacement easements is not properly attributable to relocation.

In *State v. City of Austin*, 331 S.W.2d 737 (Tex. 1960), the Supreme Court indicated that replacement easements are not properly attributable to relocation. *See id.* at 746. The City argues that the Supreme Court's statement was mere dictum that should be ignored. *See* Brief of City at 28. However, a higher court's statements of law that are not pivotal to that court's decision may still be considered binding on lower courts. *See*, *e.g.*, *Elledge v. Friberg–Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex.2007); *R.R. Comm'n of Tex. v. Aluminum Co. of Am.*, 380 S.W.2d 599, 601 (Tex.1964). "Judicial dictum, a statement by the supreme court made very deliberately after mature consideration and for future guidance in the conduct of litigation, is 'at least persuasive and should be followed unless found to be erroneous.'" *Zapata Cnty. Appraisal Dist. v. Coastal Oil & Gas Corp.*, 90 S.W.3d 847 (Tex. App.—San Antonio 2002, pet. denied) (quoting *Edwards v. Kaye*, 9 S.W.3d 310, 314 (Tex. App.—Houston [14th Dist.] 1999, pet. denied)). In *City of Austin*, the Supreme Court's statement that the cost of acquiring replacement easements is not properly attributable to relocation appears to be judicial dictum, made after careful consideration and for guidance in future cases. *See City of Austin*, 331 S.W.2d at 746.[9] Thus, it should be followed.

---

[9]It is instructive that in spite of the recommendation of two of its members, the majority of the Court refused to delete the statement from the Court's opinion. *See City of Austin*, 331 S.W.2d

The City does cite *City of Austin* in support of its argument that it should be reimbursed for replacement easements. *See* Brief of City at 21–24. However, *City of Austin* did not involve reimbursement for replacement easements but rather reimbursement for the utility facilities themselves that were being relocated in the highway right of way. The State argued that 203.092's predecessor statute was an unconstitutional grant of public money but the Supreme Court disagreed. *See id.* at 745. Nonetheless, the Court specifically distinguished the cost of acquiring right of way that would be owned by a utility saying reimbursement for those costs "would be an unconstitutional gift for a private purpose." *Id*. at 746. Therefore, the City cannot rely on the *City of Austin* opinion to support its position.

Reimbursement for replacement easements also cannot be considered properly attributable to relocation because the City has the right to relocate its lines within the State's new right of way, a location that is functionally equivalent to location in a non-exclusive public utility easement, making the acquisition of replacement easements totally unnecessary and a waste of scarce governmental resources. The City responds that it has chosen not relocate its lines within the State's new right of way because it will not have control of and access to its utilities if they are placed in the State's new right of way. *See* Brief of City at 28–29. This argument is a red herring given that the City has a legal right to operate, construct, and maintain its

at 747 (Smith, J., op. on mot. for reh'g).

facilities in the highway right of way, and TxDOT's regulations only require notice before engaging in construction, maintenance or repair. *See supra* pp. 2–3.

### iii. The City does not have a compensable interest in the land occupied by the facilities to be relocated.

The City is not entitled to reimbursement for replacement easements because the City's interests are non-exclusive public utility easements held by the City in its governmental capacity. *See* Brief of TxDOT at 25–27. The City does not deny that the public utility easements are held by the City in its governmental capacity.[10] Instead, it asserts that it is seeking reimbursement for public and private easements that are compensable property interests. *See* Brief of City at 29–34. The City's assertion has no merit. First, the City is not seeking reimbursement for any private easements. As discussed above, the only private easement pointed to by the City is the Grizzard easement which was not submitted for reimbursement when Utility Agreement U14331 was submitted by the City. All of the property interests referenced in Utility Agreement U14331 are public utility easements. *See* CR 116–125; *see also supra* pp. 2–3.

---

[10]That property held by a municipality in its governmental capacity may be taken by the State without the payment of compensation appears to be black letter law. *See* 4A Julius L. Sackman, *Nichols on Eminent Domain* § 15.01[3], at 15-8 (3d ed. 2004); Annotation, *Right of Public Body to Compensation Where Property Held by it is Taken for Another Public Purpose*, 56 A.L.R. 365, Part II.a. (2011); 29A C.J.S. *Eminent Domain* § 126 (2014); *see also Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637 (Tex. 2004) ("municipalities [do not] possess a superior ownership interest in public roads vis-a-vis the State that would support a right to compensation under the Constitution's takings clause when they are applied to another public use"); *Robbins v. Limestone Cnty.*, 268 S.W. 915 (Tex. 1925).

Second, all of the cases cited by the City regarding the compensability of easements, with the exception of the *H L & P* case, involved private easements. *See e.g.*, *Harris Cnty. Flood Control Dist. v. Shell Pipe Line Corp.*, 591 S.W.2d 798 (Tex. 1979) (private easement); *Hubert v. Davis*, 170 S.W.3d 706 (Tex. App.—Tyler 2005, no pet.) (same); *Magnolia Pipe Line Co.*, 348 S.W.2d 537 (same); *City of Grand Prairie v. Am. Tel. & Tel. Co.*, 405 F.2d 1144 (5th Cir. 1969) (same).

Third, the Court's holding in *Houston Lighting & Power Co. v. State*, 925 S.W.2d 312 (Tex. App.—Houston [14th Dist.] 1996, writ denied), should be distinguished. In *H L & P*, the utility was seeking reimbursement for the cost of relocation of the facility, not for the cost of replacement easements. In addition, the cases relied on by this Court in *H L & P* admittedly involved private easements not public utility easements. Moreover, the State is entitled to argue for a change or modification of law existing in this Court, especially given the Supreme Court's decision in *Texas Department of Transportation v. City of Sunset Valley*, issued several years after the *H L & P* decision. *See City of Sunset Valley*, 146 S.W.3d 637 (Tex. 2004).

Fourth, the City's contention that TxDOT is estopped from asserting that the City doesn't have a compensable interest in public utility easements, s*ee* Brief of City at 32–33, must be rejected. The City states that TxDOT acknowledged the applicability of § 203.092 by entering Utility Agreement U14331 regarding relocation

of the utility facilities themselves. Nevertheless, this agreement involved reimbursement for the utility facilities not reimbursement for replacement easements. Moreover, the State is not subject to estoppel. *State v. Durham*, 860 S.W.2d 63, 67 (Tex. 1993); *see also City of San Antonio v. TPLP Office Park Props.*, 218 S.W.3d 60, 67 (Tex. 2007) (per curiam) (City not estopped from closing driveway to regulate traffic); *City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 773–78 (Tex. 2006) (City was not estopped from enforcing ordinance which prevented access driveway); *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835–36 (Tex. 1970) (City not estopped from classifying property as residential for zoning purposes); *Argyle Indep. Sch. Dist. v. Wolf*, 234 S.W.3d 229, 240–46 (Tex. App.—Fort Worth 2007, no pet.) (School District was not estopped from changing policy regarding tuition even though superintendent had previously stated in letter that residents of particular street would not be charged tuition).

Finally, the City claims that during negotiations with the City TxDOT recognized that replacement easements were compensable. *See* Brief of City at 33–34. The City's claim is not accurate. *See supra* pp. 4–6. TxDOT acknowledged that the City could be reimbursed for the Grizzard easement because it was a private easement that was compensable in eminent domain. See CR 156–57. TxDOT has never acknowledged that non-exclusive public utility easements are compensable.

20

**c.** **Construction of Section 203.092 as requiring reimbursement for replacement easements would cause the State to pay betterment costs in violation of the Texas Constitution.**

TxDOT asserts that § 203.092 should not be interpreted to require the State to reimburse the City for replacement of non-exclusive public utility easements with exclusive private easements because such an interpretation may result in a constitutional violation. The City contends that this Court may not consider a claim under the Constitution for the first time on appeal, and that the courts may not consider the merits on a plea to the jurisdiction. *See* Brief of City at 44–47. The City's contentions have no merits for several reasons.

First, TxDOT is not asserting a "claim" under the Constitution but rather an argument why § 203.092 should not be interpreted to require the State to reimburse the City to replace non-exclusive public utility easements with exclusive private easements. Second, the Supreme Court recognized in *Texas Department of Parks & Wildlife v. Miranda,* 133 S.W.3d 217 (Tex. 2004), that where a jurisdictional challenge implicates the merits of a plaintiff's cause of action the court may review relevant evidence to determine if a fact issue exists. *See id.* at 227. Third, the issue in an *ultra vires* claim is whether a government official has failed to comply with a statutory or constitutional provision. *See Heinrich*, 284 S.W.3d at 372. To determine whether an official has failed to comply, and thus whether the court has jurisdiction,

the court must interpret the provision in question. *See McLane Co., Inc. v. Strayhorn*, 148 S.W.3d 644, 650 (Tex. App.—Austin 2004, pet. denied). Finally, jurisdiction may be raised at any time. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88 (Tex. 2012); *Anderson v. Truelove*, 446 S.W.3d 87 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Thus, TxDOT is not precluded from making jurisdictional arguments on appeal.

According to the City, reimbursement for replacement of non-exclusive public utility easements with exclusive private easements would not result in betterment because exclusive private easements would insure access to its utility lines and TxDOT has conceded that Section 203.092 applies to the City's request for reimbursement for non-exclusive public utility easements. See Brief of City at 47–48. However, as discussed above, the concern regarding access is a red herring given that the City has a legal right to operate, construct, and maintain its facilities in the highway right of way and TxDOT's regulations only require notice before engaging in construction, maintenance or repair. *See supra* pp. 2–3. Furthermore, TxDOT has never acknowledged that non-exclusive public utility easements are compensable. *See supra* pp. 4–6.

**II. The City's claim under Article 1, Section 17 of the Texas Constitution is barred by the State's sovereign immunity.**

In its first amended petition, the City asserted that Appellants' actions violated Article 1, Section 17 of the Texas Constitution. CR 33–5. The City asserts that it did

22

not intend to make a claim for inverse condemnation, and that it did not intend to seek monetary relief for inverse condemnation through a request for declaratory relief. *See* Brief of City at 49–50. But, to the extent that its petition could be interpreted as a claim for inverse condemnation, the Court has no jurisdiction because such a claim would be invalid. *See Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012) (sovereign immunity is retained where a plaintiff fails to properly plead or establish an inverse condemnation claim). The City cannot assert an inverse claim for the taking of public utility easements because they are not property interests that are compensable in eminent domain. *See* Brief of TxDOT at 25–27; *see also supra* pp. 17–18.

To the extent that the City's petition could be interpreted as an attempt to characterize a suit for money damages as a declaratory judgment action it is also barred by sovereign immunity. *See Millwee-Jackson Joint Venture v. Dall. Area Rapid Transit,* 350 S.W.3d 772, 785–86 (Tex. App.—Dallas 2011, no pet.).

## III.    The City's claims regarding Segment 7 are not ripe.

TxDOT raised the jurisdictional issue of ripeness in the trial court but the City did not come forward with any evidence of ripeness with respect to Segment 7. Thus, the Court has no jurisdiction with respect to claims regarding Segment 7. *See Tex. Mun. Power Agency v. Johnson,* 405 S.W.3d 776, 781 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("A claim is not ripe if it concerns 'uncertain or contingent

23

future events that may not occur as anticipated or may not occur at all," quoting *Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 851–52 (Tex. 2000)).

## IV. The City's claim for attorneys' fees is barred by the State's sovereign immunity.

The UDJA does not waive the State's sovereign immunity for the City's claim seeking construction of a statute. *See Sefzik*, 355 S.W.3d at 621; *Heinrich*, 284 S.W.3d at 370–71. In addition, the State's sovereign immunity as to the City's *ultra vires* claim is not waived because such suits cannot be brought against the Commission, and because Houghton did not fail to perform a nondiscretionary duty under Section 203.092 of the Texas Transportation Code. *See Heinrich,* 284 S.W.3d at 372–73. Thus, the City's UDJA claims are not authorized and the State retains sovereign immunity from the claim for attorneys' fees. *See John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst,* 90 S.W.3d 268, 289 (Tex. 2002).

## PRAYER

Appellants, Texas Transportation Commission and Ted Houghton, in his official capacity as Chair of the Texas Transportation Commission, respectfully pray that this Honorable Court of Appeals grant the following relief:

1) reverse (1) the court's denial of Defendants' Second Amended Plea to the Jurisdiction and Amended Motion for Summary Judgment Under Tex. R. Civ. P. 166a(b) and (c); (2) the court's order, signed October 23, 2014, that denied

Defendants' Motion for Reconsideration; and (3) the court's order signed December 3, 2014 that denied Appellants' second amended plea to the jurisdiction.

2) dismiss all of Appellee's claims for want of jurisdiction;

3) render judgment that Appellee take nothing; and

4) order that Appellee pay all costs incurred by Appellants.

Respectfully submitted,

KEN PAXTON
ATTORNEY GENERAL OF TEXAS

CHARLES E. ROY
FIRST ASSISTANT ATTORNEY GENERAL

JAMES E. DAVIS
DEPUTY ATTORNEY GENERAL FOR CIVIL LITIGATION

RANDALL K. HILL
ASSISTANT ATTORNEY GENERAL
CHIEF, TRANSPORTATION DIVISION

/s/ Anthony G. Brocato, Jr.
ANTHONY G. BROCATO, JR.
Assistant Attorney General
State Bar No. 03039001
anthony.brocato@texasattorneygeneral.gov
SUSAN DESMARAIS BONNEN
Assistant Attorney General
State Bar No. 24053873
susan.bonnen@texasattorneygneral.gov
Transportation Division

25

P.O. Box 12548
Austin, Texas 78711-2548

(512) 463-2004
(512) 472-3855 - Facsimile

COUNSEL FOR APPELLANTS
TEXAS TRANSPORTATION
COMMISSION AND TED HOUGHTON,
IN HIS OFFICIAL CAPACITY, AS
CHAIR OF THE TEXAS
TRANSPORTATION COMMISSION

## CERTIFICATE OF COMPLIANCE

I certify that this document contains <u>6176</u> words as determined by the word count of the computer program used to prepare this document, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

<u>/s/ Anthony G. Brocato, Jr.</u>
ANTHONY G. BROCATO, JR.
Assistant Attorney General

## CERTIFICATE OF SERVICE

This is to certify that on the 9th day of March, 2015, a true and correct copy of the foregoing *Reply Brief of Appellants Texas Transportation Commission and Ted Houghton, in His Official Capacity as Chair of the Texas Transportation Commission* has been sent via electronic service and email, to the following:

Mr. Charles W. Irvine
Irvine & Conner, PLLC
4709 Austin Street
Houston, Texas 77004
*Attorney for Appellee, City of Jersey Village*

<u>/s/ Anthony G. Brocato, Jr.</u>
ANTHONY G. BROCATO, JR.
Assistant Attorney General

Apr-29-98 11:32A Grizzard Prop          713 521 7212          P.04

T011293

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

## UTILITY EASEMENT

THE STATE OF TEXAS          05/11/98 100744001 T011293          $13.00
COUNTY OF HARRIS
CITY OF JERSEY VILLAGE

KNOW ALL MEN BY THESE PRESENTS, that GRIZZARD PARTNERSHIP, LTD., hereinafter called Grantor(s), for and in consideration of the sum of ten dollars and other good and valuable services paid to Grantor(s) in hand by the City of Jersey Village, Texas, has granted, sold and conveyed, and by these presents does grant, sell and convey to the City of Jersey Village, Texas, a municipal corporation, 16501 Jersey Drive, Houston, Texas 77040, a 10 foot wide utility easement and an additional 20 foot temporary working easement, said 20 foot temporary working easement to exist during the least amount of time reasonably necessary to complete construction or repair of a 12" water line in the 10 foot utility easement (total easement width temporary and permanent being 30 feet) to enter upon and construct, reconstruct, maintain, operate, inspect, replace, repair, and remove an underground municipal utility line together with all necessary appurtenances over and across the property described in Exhibit A attached hereto and *(as the made a part hereof for all intents and purposes as if the same were copied verbatim herein. The City hereby agrees* *permanent* to restore any portion of the property relative to this easement that is disturbed for utility infrastructure purposes to *easement)* a reasonably similar condition as its original condition within a reasonable period of time after completion of the project, or any subsequent repairs thereto.

Grantor and its heirs and assigns hereby retain all rights, abilities and authorities to construct and permanently maintain paved access and/or driveways across, over and through said utility easements (both permanent and temporary).

To have and to hold the above described premises, except as provided above, together with all and singular the rights and appurtenances thereto in any wise belonging, to the City of Jersey Village, Texas, its successors or assigns forever. The Grantor does hereby bind itself, its heirs and assigns, to warrant and forever defend all and singular the said easement to the City of Jersey Village, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

Executed this 29 th day of ___APRIL___, A.D. 1998.

By _James M. Grizzard VP_          By _Suzanne G. Werner, P._
James M. Grizzard, General Partner          Suzanne G. Werner, General Partner President
Grizzard Partnership, Ltd. Vice-President          Grizzard Partnership, Ltd.
Plantation Land Company          Plantation Land Company
General Partner          General Partner

THE STATE OF COLORADO.
COUNTY OF OURAY

This instrument was acknowledged before me on the 29th day of ___APRIL___, 1998, by James M. Grizzard.

_Bobbie Wilson_
Notary Public in and for The State of Colorado
Notary's Printed Name:
BOBBIE WILSON
My Commission expires: ___11/30/98___

NOTARY PUBLIC
BOBBIE
WILSON
STATE OF COLOR.

---

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/4/2014
**Stan Stanart, County Clerk**
Harris County, Texas

_Krystal Chavez_
_____ Deputy
Krystal Chavez



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

THE STATE OF TEXAS,
COUNTY OF HARRIS

This instrument was acknowledged before me on the 6TH day of MAY, 1998, by Suzanne G. Werner.

*Kyla M. Martin*
Notary Public in and for The State of Texas
Notary's Printed Name:
KYLA M. MARTIN
My Commission expires: 8/6/2000

**KYLA M. MARTIN**
Notary Public, State of Texas
My Commission Expires
AUGUST 6, 2000

*hold for pick up*
*Katrina*

FILED
98 MAY 11 AM 10: 19
COUNTY CLERK
HARRIS COUNTY, TEXAS

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/4/2014
**Stan Stanart, County Clerk**
Harris County, Texas

*Krystal Chavez*
_____ Deputy
Krystal Chavez



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

SKETCH OF
PROPOSED 10 FEET
WATER LINE EASEMENT OUT
OF LOTS 16, 17 AND 18 OF
HILLCREST GARDEN RECORD-
ED IN VOL. 725, PG. 104
HARRIS COUNTY DEED RECORDS,
IN THE THOMAS HOGAN SURVEY,
ABSTRACT NO. 326, HARRIS
COUNTY, TEXAS.

U.S. HWY. 290
(width varies per Deed as noted)

PROP. 10' WATER LINE EASEMENT

APPROVED FOR RECORDING ONLY

COUNTY ENGINEER

LANDTECH CONSULTANTS, INC.

RECORDER'S MEMORANDUM
At the time of recordation this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/4/2014
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Krystal Chavez



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

MAY 1 1 1998

COUNTY CLERK
HARRIS COUNTY TEXAS

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/4/2014
**Stan Stanart, County Clerk**
Harris County, Texas

Krystal Chavez _____ Deputy

